[No. G039424. Fourth Dist., Div. Three. Aug. 13, 2008.]

CHRISTIAN RESEARCH INSTITUTE et al., Plaintiffs and Respondents, v. WILLIAM ALNOR, Defendant and Appellant.

**COUNSEL**

Ross, Dixon & Bell, Kevin F. Kieffer, Becki F. Kieffer, Jennifer Mathis, Jenece D. Solomon, Michael S. Gower; ACLU Foundation of Southern California and Peter J. Eliasberg for Defendant and Appellant.

Tom S. Chun for Plaintiffs and Respondents.

**OPINION**

**ARONSON, J.**—William Alnor appeals from a postjudgment order awarding him $21,300 in attorney fees as the prevailing defendant on his anti-SLAPP motion to strike.[1] Alnor contends his counsel reasonably expended more than 600 hours on the motion and the ensuing appeal, but the trial court disagreed, reducing the compensable attorney time to just 71 hours. Substantial evidence supports the trial court's conclusion counsel leavened the fee request with noncompensable hours and vague, indecipherable billing statements, destroying the credibility of the submission and therefore justifying a severe

---

[1] SLAPP stands for strategic lawsuit against public participation, and is codified in Code of Civil Procedure section 425.16. All statutory references are to the Code of Civil Procedure, unless otherwise noted.

reduction. We may not reweigh the trial court's implicit credibility determination, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Following a successful appeal in which we overturned, by a two-to-one decision, the trial court's denial of his motion to strike, Alnor filed a motion in the trial court to recover his costs and attorney fees under subdivision (c) of the anti-SLAPP statute. Section 425.16, subdivision (c), provides: "In any action subject to [an anti-SLAPP motion], a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [s]ection 128.5."

Alnor submitted billing statements and attorney declarations claiming his counsel worked 638.6 hours on the motion to strike and the appeal. According to the records, counsel dedicated 228.7 hours to the pretrial motion and the rest, approximately 410 hours, to the appeal.

The trial court provided a tentative decision in which the court awarded Alnor $21,300 in attorney fees and $1,494.83 in costs. The trial court observed: "While the court is required to award attorney fees to the prevailing defendant after a SLAPP motion[,] the court is only required to award reasonable attorney fees. The court finds that the moving party's claim for over 600 hours of time by 5 attorneys for total attorney fees of over $250,000.00 is excessive. While SLAPP motions are generally difficult, this one was not particularly complex. There was only one cause of action for defamation. The plaintiff conceded the first prong of the two prong test. Thus, the only issue was whether plaintiff met its burden of showing a probability of success. This issue was narrowed further[,] focusing on the question of malice and the applicable standard. The court found that much of the work done by the different lawyers was duplicative and unnecessary. The court found that the use of 'block billing' obscured the nature of some of the work claimed. Much of the work claimed also appeared more related to preparing the case for trial rather th[a]n advancing the anti-SLAPP motion . . . ."

At the hearing on the motion, the trial court again noted that "[t]his was a single SLAPP motion on a single issue and you claimed attorney fees of over

600 hours, more than $250,000, [with] five attorneys working on this motion." The court added, "I just don't think that's appropriate, but I'll listen [to] what you have to say." Unpersuaded by counsel's argument, the court awarded counsel $21,300 in attorney fees, based on 25 hours for the motion, 40 hours for the appeal, and six hours of attorney time for the fee motion. Alnor now appeals.

## II

## DISCUSSION

### A. *Governing Law*

■ The anti-SLAPP statute provides for an award of attorney fees and costs to the prevailing defendant on a special motion to strike. (§ 425.16, subd. (c).) The defendant may recover fees and costs only for the motion to strike, not the entire litigation. (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 381 [46 Cal.Rptr.3d 380, 138 P.3d 713] (*Berti*); *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383 [46 Cal.Rptr.2d 542] (*Lafayette Morehouse*).) Appellate challenges concerning the motion to strike are also subject to an award of fees and costs, which are determined by the trial court after the appeal is resolved. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].) The defendant may claim fees and costs either as part of the anti-SLAPP motion itself or more commonly, as here, through the filing of a subsequent motion or cost memorandum. (*American Humane Assn. v. Los Angeles Times Communications* (2001) 92 Cal.App.4th 1095, 1097 [112 Cal.Rptr.2d 488].)

As the moving party, the prevailing defendant seeking fees and costs " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' [Citation.] To that end, the court may require [a] defendant[] to produce records sufficient to provide ' "a proper basis for determining how much time was spent on particular claims." ' [Citation.] The court also may properly reduce compensation on account of any failure to maintain appropriate time records. [Citation.]" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020 [113 Cal.Rptr.2d 625] (*ComputerXpress*).) The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended. (*Ibid.*)

■ A trial court "assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131–1132 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*).) The court tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work. (*Id.* at p. 1134; *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Priest*).) "[T]he lodestar figure may be increased *or decreased* depending on a variety of factors, including the contingent nature of the fee award." (*Ketchum*, at p. 1134, italics added.) The *Ketchum* court further noted that pursuant to *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*), "*absent circumstances rendering the award unjust,* 'an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent,* including those relating solely to the fee." (*Ketchum*, at p. 1133, first italics added.) The Supreme Court cautioned in *Ketchum* that " 'padding' in the form of inefficient or duplicative efforts is not subject to compensation. [Citation.]" (*Id.* at p. 1132.)

■ Because the Legislature specified the prevailing defendant "shall be entitled to recover his or her attorney's fees and costs" (§ 425.16, subd. (c)), an award is usually mandatory. (See *Ketchum, supra,* 24 Cal.4th at pp. 1131, 1137–1138.) The Legislature, however, did not intend recovery of fees and costs as a windfall. (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 361 [42 Cal.Rptr.2d 464] (*Robertson*); see *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 283 [35 Cal.Rptr.3d 909] [noting "ironic unintended consequence that anti-SLAPP procedures, enacted to curb abusive litigation, are also prone to abuse"].) The prevailing party is entitled to a reasonable award (*Ketchum, supra,* at p. 1133); consequently, the trial court need not simply award the sum requested. (*Robertson,* at p. 361.) To the contrary, ascertaining the fee amount is left to the trial court's sound discretion. (*Ketchum,* at p. 1132; *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1252 [49 Cal.Rptr.3d 861] (*Maughan*).) Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts. (*Ketchum,* at p. 1132; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095–1096 [95 Cal.Rptr.2d 198, 997 P.2d 511]); see *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623 [134 Cal.Rptr. 602] ["trial court has its own expertise" on the question of fees].)

■ Inflated fee requests constitute a special circumstance. In emphasizing that a trial court retains the discretion to award attorney fees in an amount

that is *less* than the lodestar amount, the *Ketchum* court noted, "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Ketchum, supra*, 24 Cal.4th at p. 1138.) Specifically, the *Ketchum* court stated, " 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' " (*Id.* at p. 1137, quoting *Serrano IV, supra*, 32 Cal.3d at p. 635.)

The *Serrano IV* court explained, " 'If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful. . . .' " (*Serrano IV, supra*, 32 Cal.3d at p. 635, quoting *Brown v. Stackler* (7th Cir. 1980) 612 F.2d 1057, 1059.) The *Serrano IV* court noted in a lengthy citation the numerous means a party may employ to inflate a fee request, justifying denial of fees altogether: "See, e.g., . . . *Lund* v. *Affleck* (1st Cir. 1978) 587 F.2d 75, 77 [if initial claim is 'exorbitant' and time unreasonable, court should 'refuse the further compensation']; . . . *Farris* v. *Cox* (N.D.Cal. 1981) 508 F.Supp. 222, 227 [time on fee petition denied for 'overreaching']; *Vocca* v. *Playboy Hotel of Chicago, Inc.* (N.D.Ill. 1981) 519 F.Supp. 900, 901–902 [fee denied in entirety on ground of counsel's dilatoriness and hours claimed for clerical work]; *Jordan* v. *United States Dept. of Justice* (D.D.C. 1981) 89 F.R.D. 537, 540 [revd. (1982) 223 U.S. App.D.C. 325 [691 F.2d 514]] [fee denied in entirety on ground of unreasonable request and inadequate documentation].)" (*Serrano IV, supra*, 32 Cal.3d at p. 635, fn. 21.)

## B. *Appellate Principles*

We review an anti-SLAPP attorney fee award under the deferential abuse of discretion standard. (*Ketchum, supra*, 24 Cal.4th at p. 1130; *Maughan, supra*, 143 Cal.App.4th at p. 1249.) The trial court's fee determination " ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum, supra*, 24 Cal.4th at p. 1132.) An attorney fee dispute is not exempt from generally applicable appellate principles: "The judgment of the trial court is presumed correct; all intendments and presumptions are indulged to support the judgment; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive." (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561–562 [20 Cal.Rptr.2d 132].)

When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated. (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 817 [5 Cal.Rptr.2d 770] (*Levy*).) The trial court is not required to issue a statement of decision. (*Ketchum, supra*, 24 Cal.4th at p. 1140; *Maughan, supra*, 143 Cal.App.4th at p. 1252; see *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 [102 Cal.Rptr.2d 662] [§ 632, providing for statements of decision, does not apply to orders on a motion].) We may not reweigh on appeal a trial court's assessment of an attorney's declaration. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622–623 [34 Cal.Rptr.2d 26].) "The trial court, with declarations and supporting affidavits, [is] able to assess credibility and resolve any conflicts in the evidence. Its findings . . . are entitled to great weight. Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations. [Fn. omitted.]" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339].)

In sum, " ' "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" [Citation.] "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] . . . ." ' " (*Maughan, supra*, 143 Cal.App.4th at pp. 1249–1250.)

## C. *Alnor Fails to Demonstrate the Trial Court Abused Its Discretion*

### 1. *The Trial Court Applied the Lodestar Method*

Alnor contends the trial court abused its discretion by failing to utilize the lodestar method approved by the Supreme Court for anti-SLAPP fee awards. (*Ketchum, supra*, 24 Cal.4th at pp. 1131–1132; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 [33 Cal.Rptr.3d 644] (*Horsford*).) Alnor complains the trial court failed to "acknowledge" the lodestar method. There is no requirement, however, that the trial court provide a statement of decision (see, e.g., *Ketchum*, at p. 1140) or otherwise detail its fealty to the law, which we presume. (Evid. Code, § 664.)

In any event, the record shows the trial court applied the lodestar method. The lodestar tabulation consists simply of "the reasonable hours spent . . .

multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation . . . ." (*Ketchum, supra,* 24 Cal.4th at p. 1133, italics omitted.) Here, the trial court identified the reasonably compensable attorney hours, 71, and, based on that figure, awarded Alnor $21,300 in fees. The court did not specify the billing rate, but basic math—dividing the award by the hours credited—reveals a rate of $300 an hour, which the court determined was reasonable and Alnor does not challenge on appeal. The court's comment on the rate, combined with the specific number of compensable hours it identified, demonstrates the court applied the lodestar method. Alnor's contrary claim is unsupported by the evidence.

In a related claim, Alnor suggests the trial court wholly ignored the billing statements submitted by his counsel. Alnor observes that, "[w]ithout an examination of the time records, a court may lack the foundation to decide that the hours spent were excessive." We agree the attorneys' submissions form the "starting point" (*Horsford, supra,* 132 Cal.App.4th at p. 397) for the trial court's determination of the " 'hours reasonably expended' " component of the lodestar analysis. (*Ketchum, supra,* 24 Cal.4th at p. 1134; see also *id.* at pp. 1131–1132, italics added [court "assessing attorney fees *begins with* a touchstone or lodestar figure, based on the 'careful compilation of the time spent . . .' "].)

█ Here, there is no basis for Alnor's charge that the trial court "fail[ed] to begin the [lodestar] process by examining the billing entries and supporting evidence . . . ." As the trier of fact, it is the trial court's role to examine the evidence, and we presume the court performed its duty. (Evid. Code, § 664.) Moreover, the record amply demonstrates the trial court's familiarity with Alnor's billing submissions. The trial court specified in its tentative decision that "much of the work done by the different lawyers was duplicative and unnecessary," "the use of 'block billing' obscured the nature of some of the work claimed," and "[m]uch of the work claimed also appeared more related to preparing the case for trial rather th[a]n advancing the anti-SLAPP motion . . . ." Thus, Alnor's suggestion that the trial court failed to review the billing records is baseless.

### 2. *The Trial Court Reasonably Concluded the Billing Hours Alnor Submitted Were Padded and Vague and Therefore Noncredible*

█ Alnor contends the trial court "had no reasonable basis for disregarding counsel['s] time records." It is well established, however, that the anti-SLAPP statute's fee provision " 'applies only to the motion to strike, and not to the entire action.' " (*Berti, supra,* 39 Cal.4th at p. 381; see *Lafayette*

*Morehouse, supra,* 39 Cal.App.4th at p. 1383.) Nevertheless, counsel inflated the fee claim with a multitude of time entries devoted to matters other than the motion to strike, thereby undermining the credibility of counsel's other entries. For example, counsel sought reimbursement for non-anti-SLAPP efforts such as attacking service of process, preparing and revising an answer to the complaint, summary judgment research, a senior associate's "[w]ork on [a] press release," and a conference "regarding the appropriate way to address opposing counsel and the client."

■ The record suggests Alnor sought to transfer to the opposing parties the cost of every minute counsel expended on the case, whether or not anti-SLAPP work was involved. The fee request included, for example, billings for obtaining the docket at the inception of the case, obtaining unspecified but "numerous court documents," and attending the trial court's mandatory case management conference—all of which would have been incurred whether or not Alnor filed the motion to strike. Indeed, counsel even sought reimbursement for drafting the client retention agreement, which does not appear to have been limited to anti-SLAPP measures given the hours counsel billed for other work. Counsel's willingness to flout the statutory restriction on the scope of anti-SLAPP fee claims justified the trial court in taking a jaundiced view of the fee request.

Counsel compounded the boldness of unauthorized reimbursement requests with vague billing entries. At least 20 entries described the trial-level work for which counsel sought fees as merely "further handling." And more than one-third of the billing entries submitted for counsel's trial-level work made no reference at all to the motion to strike or otherwise designated the hours expended as anti-SLAPP work. "The 'experienced trial judge is the best judge of the value of professional services rendered in his court . . . .' " (*Priest, supra,* 20 Cal.3d at p. 49.) Substantial evidence supports the trial court's conclusion block billing "obscured the nature of some of the work claimed," further damaging counsel's credibility. Block billing, while not objectionable per se in our view, exacerbated the vagueness of counsel's fee request, a risky choice since the burden of proving entitlement to fees rests on the moving party. (*ComputerXpress, supra,* 93 Cal.App.4th at p. 1020.)

■ Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded. (*Levy, supra,* 4 Cal.App.4th at p. 817 [substantial fee reduction "indicat[es] Levy improperly inflated his claimed" attorney fees]; see *Maughan, supra,* 143 Cal.App.4th at pp. 1251–1252.) An attorney's chief

asset in submitting a fee request is his or her credibility, and where vague, block-billed time entries inflated with noncompensable hours destroy an attorney's credibility with the trial court, we have no power on appeal to restore it. (See *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 524 [198 Cal.Rptr. 725] ["The trial court is not bound by an attorney's evidence in support of his requested fee."].)

We note Alnor's anti-SLAPP motion did not require intensive discovery. The billing entries in the fee request reveal Alnor furnished counsel with the requisite supporting documents, which do not appear to have been voluminous because, to the extent discernible in the block-billed entries, counsel only spent a couple of hours reviewing them. They appear to consist simply of excerpts from plaintiffs' Web site and five republications of Alnor's comments by two media outlets.

There is no evidence counsel devoted extensive time to investigation. Counsel's two-paragraph declaration attached to the motion to strike states merely that she conducted a Google search yielding hits on "Christian Research Institute" and "Hank Hanegraaff." The lone reference in the billing entries to any postal service investigation is a single telephone call. In addition to her own declaration, counsel prepared a two-page declaration for Jay Howard, director of the Religious Research Project, and a seven-page effort for Alnor, which devoted four pages to his lifetime employment history and three pages to his version of his earlier telephone calls to the post office.

Faced with a motion that involved little or no time spent on discovery, the trial court was justifiably puzzled at the size of the fee request. The trial court observed the matter was not particularly complicated for an anti-SLAPP motion, and nothing in counsel's billing submission establishes otherwise. The attorneys' legal research entries do not suggest the pertinent issues were difficult, since counsel spent almost as much time on mundane research concerning page-limit extensions and whether the trial court had discretion to delay the motion hearing beyond 30 days as on any particular substantive question. Indeed, the five attorneys Alnor deployed on the motion appear to have expended more time telephoning, conferencing, and e-mailing each other than on identifiable legal research for the motion, supporting the trial court's conclusion the matter was overstaffed. In sum, based on the trial court's own observations in managing the proceedings up to the hearing and on the billing record eventually submitted, the court could reasonably determine counsel's fee request was unreasonably padded, vague, and worthy of little credence.

As the trier of fact, the trial court's assessment of the reasonableness of counsel's efforts in his or her courtroom on a motion to strike naturally informs that court's conclusions regarding fees on appeal, which the trial court determines. Our experience, while not determinative, confirms the trial court's conclusion the matter was not so complex as to require anywhere near the massive number of hours for which counsel demanded fees. Counsel repeatedly refers to the six following issues as particularly complex, but we note the first two are settled as hornbook law in the anti-SLAPP context (see *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 80 [55 Cal.Rptr.3d 600] (*Christian Research*)) and the final three are duplicative, merely reiterating application of the actual malice standard in this case.

Counsel contends: "One need only skim the opinion of this Court to see how complex, and sometimes novel, the issues involved in this anti-SLAPP motion were. Those issues included: (1) whether a plaintiff was required to present *admissible* evidence to demonstrate a probability of prevailing on the merits; (2) whether it is proper for the trial court to weigh the evidence in ruling on anti-SLAPP motions; (3) whether Plaintiffs were required to prove falsity by clear and convincing evidence or by a preponderance of the evidence; (4) whether Plaintiffs had shown actual malice by clear and convincing evidence, including reviewing each piece of evidence and each step of Alnor's investigation; (5) whether Plaintiffs' showing that the evidence supported an inference that Alnor acted with actual malice met the clear and convincing standard; and (6) whether Plaintiffs had demonstrated any connection between Alnor's alleged ill will toward them and Alnor's belief about the truth of his publication."

True, the third issue presented a First Amendment question still unanswered by the United States Supreme Court, and we were the first California court to hold a defamation plaintiff need only demonstrate falsity by a preponderance of evidence, disagreeing with *Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146 [15 Cal.Rptr.3d 100]. (See *Christian Research, supra,* 148 Cal.App.4th at pp. 81–82.) But we resolved this issue without any aid from Alnor, specifically noting in our opinion that "Alnor provide[d] no argument why the element of falsity requires a clear and convincing evidence standard to protect freedom of expression." (*Id.* at p. 82.) We resolved the issue simply based on the Evidence Code's default rule that the burden of proof is a preponderance of the evidence unless otherwise specified. (*Ibid.*; Evid. Code, § 115.)

That is not to say *Christian Research* was an easy case. Our dissenting colleague there ably demonstrated reasonable minds could disagree concerning "application of the law to the facts in this case." (*Christian Research, supra,* 148 Cal.App.4th at p. 93 (dis. opn. of Rylaarsdam, J.).) But a case that presents a close question based on the facts is not necessarily a complex or time-consuming one. Here, for instance, the dissent concurred the legal issues were not overly complex, "wholly agree[ing] with my colleagues' legal analysis." (*Ibid.*) Indeed, as we discussed, and the dissent agreed, ample precedent dating back more than two decades established that a reviewing court exercises its independent judgment to determine whether a defamation plaintiff has presented evidence of malice " ' "sufficiently strong to command the unhesitating assent of *every* reasonable mind." ' " (*Id.* at p. 85, italics added.)

Given that precedent so amply established the controlling issue, the trial court was entitled to note, in assessing the reasonableness of more than 400 hours counsel logged on appeal, that counsel failed to uncover or cite the seminal cases applying the dispositive standard. (*Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172 [264 Cal.Rptr. 699]; see *McCoy v. Hearst Corp.* (1986) 42 Cal.3d 835, 846 [231 Cal.Rptr. 518, 727 P.2d 711] [reviewing "court is not bound to consider the evidence of actual malice in the light most favorable to respondents or to draw all permissible inferences in favor of respondents"]; rather, see *Bose Corp. v. Consumers Union of U. S., Inc.* (1984) 466 U.S. 485, 511 [80 L.Ed.2d 502, 104 S.Ct. 1949] [reviewing judges, "as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold [to establish] clear and convincing proof of 'actual malice' "]; see generally *Christian Research, supra,* 148 Cal.App.4th at p. 86.) Alnor points to our resubmission of the case as evidence of its complexity but, as the trial court no doubt understood, other cases compete for our attention, sometimes requiring resubmission.

### 3. *The Trial Court Did Not Abuse Its Discretion in Awarding Compensation for 71 Hours of Attorney Time*

Alnor challenges the number of compensable hours the trial court selected for its lodestar calculation. Quoting federal cases, Alnor complains the trial court made " 'no attempt to calibrate the number chose[n] to demonstrable inefficiency in carrying out particular tasks.' " (*Ferland v. Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145, 1149.) And, paying lip service to the trial court's discretion to determine a reasonable fee, Alnor concedes merely

that the court "does have discretion to reduce *individual* billing entries that are improper."

Alnor's position flies in the face of California law. As our Supreme Court has observed: " 'If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful. . . .' " (*Serrano IV, supra*, 32 Cal.3d at p. 635.) Similarly, counsel may not submit a plethora of noncompensable, vague, block-billed attorney time entries and expect particularized, individual deletions as the only consequence. The trial court could reasonably conclude counsel made no effort to prune the fee request to comply with the law. Counsel erred grievously by attempting to transfer that responsibility onto the trial court. The trial court could reasonably conclude counsel's disregard for the law undercut the credibility of their fee request and, as officers of the court, warranted a severe reaction.

■ Alnor contends a significantly higher award, of some unspecified amount, was necessary to serve the interests of the anti-SLAPP statute. But counsel may not leverage the statute to obtain an "unjust" award. (*Serrano IV, supra*, 32 Cal.3d at p. 635.) As our Supreme Court observed in *Ketchum*, " 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' " (*Ketchum, supra*, 24 Cal.4th at p. 1137.) The trial court could reasonably conclude the inflated, noncredible, often vaguely documented hours claimed by counsel precluded turning Alnor's contingent fee arrangement with counsel into a windfall.

■ Finally, Alnor contends the trial court abused its discretion by not awarding a fee enhancement for counsel's services. Needless to say, the trial court need not consider a multiplier when presented with an inflated, unreasonable fee request. (*Ketchum, supra*, 24 Cal.4th at p. 1138 ["the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof"].)

## III

## DISPOSITION

The trial court's attorney fee award is affirmed. Respondents are entitled to their costs on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.