Filed 9/13/17

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEBRA A. ROTH, | D070484 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-0083847-CU-BC-CTL) |
| ANICE M. PLIKAYTIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Lisa C. Schall, Judge. Affirmed in part, reversed in part, and remanded.

McMillan Law Firm and Scott A. McMillan for Defendant and Appellant.

Hamilton & McInnis, Ben-Thomas Hamilton, and Kristine S. Stcynske for Plaintiff and Respondent.

Defendant Anice Plikaytis appeals from an order awarding her attorneys' fees in a breach of contract action brought by plaintiff Debra Roth. In the published portion of the opinion, we agree with Plikaytis's contention that the trial court erred when it declined to consider previously filed documents she incorporated by reference as part of her motion.

---

*     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part B of the Discussion.

In the remaining unpublished portions of the opinion, we discuss Plikaytis's arguments that (1) the court failed to apply the lodestar method, (2) erroneously denied fees for equitable and cross-claims and for obtaining relief from bankruptcy stays, and (3) substantially reduced her award without explanation. We conclude the court erred by denying fees for obtaining bankruptcy stay relief that related to the breach claim and failing to provide an adequate justification for significantly reducing the number of hours allowed. We are unpersuaded by Plikaytis's remaining contentions. Accordingly, we affirm in part, reverse in part, and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Events and Breach of Contract Trial*

This case arose out of financial dealings between Debra Roth, her husband James Roth, Plikaytis, and Talmadge East, LLC (Talmadge).[1] As is relevant here, Debra loaned $250,000 to Talmadge, and James and Plikaytis signed promissory notes (the Note) personally guaranteeing this amount. The Note contained an attorneys' fee provision: "If any action is necessary to enforce payment of this Note, Borrower promises to pay all costs incurred in the action or proceeding, including attorney[s'] fees."

In January 2010 Debra sued Talmadge, James, and Plikaytis for failure to repay the Note and regarding other loans not at issue here. She alleged breach of contract (with one count relating to the Note), unjust enrichment and declaratory relief (based on the same facts as the breach claim), and money due on open book account and account stated

---

[1] As Debra and James Roth share the same last name, we refer to them by their first names in the interest of clarity. We intend no disrespect.

2

(against Talmadge, and relating to one of the other loans). In May 2010 James filed for bankruptcy and proceedings were stayed as to him.

Plikaytis filed a cross-complaint and amended it twice, following demurrers and motions to strike. In March 2011 she filed the operative second amended cross-complaint against Debra, James, two Roth entities, and Talmadge. She sought dissolution and an accounting of Talmadge, two counts of declaratory relief (including one against Debra, alleging a right of offset as to the Note and seeking to enjoin Debra from collecting on it), and indemnity from Talmadge and James.

Plikaytis obtained new counsel twice during these proceedings. In December 2010 Stephen Cummings became her attorney. In November 2011 Scott A. McMillan and The McMillan Law Firm, APC (McMillan) substituted in as her counsel and they remain her counsel of record.

The legal claims were bifurcated from the equitable claims, and a default was entered against Talmadge. In May 2012 the case proceeded to an eight-day jury trial on the breach of contract claim against Plikaytis. The jury returned a verdict in Plikaytis's favor.

*Proceedings Following the Breach of Contract Trial*

Plikaytis moved for relief from the stay in James's bankruptcy case, to pursue dissolution of Talmadge. In March 2013 the bankruptcy court granted relief so James could dissolve Talmadge (or, if he failed to do so, so Plikaytis could seek relief to obtain judicial dissolution). The court denied relief as to the remainder of the cross-complaint.

3

Plikaytis also filed an adversary complaint in bankruptcy court against Debra; it did not mention the Note.[2]

In May 2013 Debra filed for bankruptcy, proceedings again were stayed, and Plikaytis again sought relief from the stay. In December 2013 the bankruptcy court granted relief to "conclude all proceedings having to do with the Complaint" in this action, including "whatever motions are necessary to . . . reduce the State Court case to judgment, including liquidating any claims for fees and for costs." The order stated the stay "shall remain in effect with respect to enforcement and collection of any judgment against the Debtor or estate property." The court also declined to allow Plikaytis to pursue her cross-complaint "against the Debtor or the Estate." Plikaytis filed another adversary complaint against Debra for nondischargeability, but it does not appear to be in the record.

In May 2014 Plikaytis filed a motion for attorneys' fees. Debra opposed the motion as premature because the equitable issues remained unresolved. The trial court agreed and denied it without prejudice. Plikaytis sought clarification as to stay relief in both bankruptcies. In February 2015 the bankruptcy court issued an order indicating, among other things, that no relief had been provided for Plikaytis to pursue her declaratory relief claim against Debra, relief was unnecessary for certain claims, and the cross-complaint could proceed as to Talmadge (and one of the Roth entities). With

---

2     We rely on the documents in the record (i.e. the bankruptcy court dockets, court orders, and the adversary action in James's bankruptcy) for our summary of the bankruptcy matters. We note it does not appear the motions for stay relief or the adversary complaint in Debra's bankruptcy (discussed *post*) are in the record, and the bankruptcy court dockets only go through early 2014.

respect to Debra's complaint, the court stated: "Until [the question of] whether [Debra's] claims against [Plikaytis] were her separate or community property is determined in this Court, the automatic stay in [James's] case protects against further proceedings on the Complaint other than for judgment to be entered on the Complaint. To enter judgment on the Complaint, this Court grants further stay relief only to the extent necessary for attorney's fees and other aspects of the judgment amount to be liquidated."

The equitable trial (encompassing the dissolution and accounting of Talmadge), took place later that year. The court entered judgment in October 2015.

*Motion for Attorneys' Fees*

In February 2016 Plikaytis again moved for attorneys' fees, seeking a total of $442,622.78. She requested $386,006 for McMillan's services, $29,402.50 for Cummings' work, and $8,000 for anticipated fees on the fee motion, as well as a multiplier based on the "nature of the case, the risk incurred, and the high caliber of service." The motion contained a table of hourly rates and hours expended, and stated it was based on the "Declaration of Scott A. McMillan in Support of Defendant Plikaytis' Motion for Attorneys' Fees [previously filed in court on May 6, 2014]" and "the Declaration of Stephen T. Cummings, Esq. in Support of Motion for Attorneys' Fees dated January 29, 2013 [previously filed in court on May 6, 2014]," among other documents. Plikaytis also filed a supplemental declaration from Scott A. McMillan, which attached billing records for the McMillan firm reflecting 1,307.56 hours of work, and a supplemental memorandum of points and authorities. Finally, Plikaytis filed a proof of service indicating that courtesy copies of certain documents were served on the

5

trial court, including the original Scott A. McMillan declaration and Cummings declaration.3

Debra opposed the fee motion on various grounds. She criticized Plikaytis's purportedly untimely filing and reliance on previously filed documents. She also challenged Plikaytis's claims for (1) work "for other litigation," including work performed in bankruptcy court; and (2) "unnecessary," "block bill[ed]," "vague," "unrelated," and "unreasonable" work, including communications with prior counsel, excessive time on discovery and trial exhibits, and unrelated posttrial work. She requested the court deny fees entirely or "significantly reduce" the fees awarded. On reply, Plikaytis maintained that incorporation by reference was sufficient, citing California Rules of Court, rule 3.1110(d).4

In April 2016 the trial court issued its award. First addressing counsel's requested hourly rates, the court stated they were "supported by Mr. McMillan's declaration filed in support of Defendant's prior motion," but "[n]o support for these rates was provided in this current motion." The court explained that "[w]ith respect to Plikaytis'[s] 'incorporation by reference' of documents previously filed, while [rule] 3.110(d) [*sic*] states that '[a]ny paper previously filed must be referred to by date of execution and title,' the Court has never seen an attorneys' fees motion that simply refers to papers, including

---

3    Plikaytis states her counsel served copies of "all documents" cited in her second fee motion. The proof of service in the record, which she cites in her opening brief, includes only a subset of the documents.

4    Further rule references are to the California Rules of Court. Rule 3.1110(d) provides that "(a)ny paper previously filed must be referred to by date of execution and title."

6

declarations, previously filed, as the support for the motion." It also noted the prior motion was denied without prejudice, not continued, and that the case file was 15 volumes. The court concluded: "Since there is nothing before the Court to support the requested hourly rates, the Court has the discretion to award a reasonable hourly rate," and set rates of $375 for Scott A. McMillan, $250 for Evan Kalooky, $175 for Michael Healy, and $50 for support staff. The court set no rate for Cummings.

Turning to the amount of time expended, the court's explanation is central to our analysis and we set it forth in full:

> "Looking at Plikaytis'[s] billing records the fees requested appear inflated and will be reduced significantly. Fees related to efforts in the bankruptcy court will be excluded from the fees awarded by way of this motion. However, it is difficult to determine which fees these are. Plikaytis submits a large stack of billing reports. While Plaintiff opposes some of the billings, the highlighted stack of reports she attaches . . . are apparently from the 2014 motion, and not the new motion, so it [is] unclear how they correlate. [¶] The number of hours claimed by McMillan Law Group is supported by McMillan's declaration filed in support of this motion, so the Court does at least have competent evidence before it in that regard. The total number of hours claimed by McMillan's firm is 1,307.56. The Court has broad discretion in fixing a reasonable fee. The Court will be reducing the number of hours by approximately half (so approximately 650 hours) to account for any bankruptcy work, claims other than the breach of contract claim, what appear to be duplicative efforts of attorneys in the firm, and other excessive entries."

The court concluded that "[w]ith this formula, Plikaytis would receive the following: [Scott A.] McMillan: $76,500 [¶] Kalooky: $12,000 [¶] Healy: $43,750 [¶] Support Staff: $7,500," for a total of $139,750." It determined that Plikaytis did not meet her burden for an unspecified multiplier, explaining the case "was not particularly novel or complex, and did not require extraordinary legal skill." With respect to Cummings, the

7

court found no evidence was submitted to support his fees (noting his declaration was "not now before the court"), and denied them. It awarded a total of $15,261.17 in costs.[5]

DISCUSSION

Plikaytis sought fees under Civil Code section 1717,[6] which provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." If there is an issue as to whether section 1717 applies, this is a legal question that we review de novo. (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1615 (*Plotnik*).)

We recognize that "the ability of lawyers to perform their important professional function in society is in the long run dependent on assurances they will be fairly compensated for their work." (*Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 291.) As a result, California law requires that attorney fee awards be "fully compensatory." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133.) In general, parties who qualify for a

---

[5]     Plikaytis states the trial court "made a summary reduction of the fees claimed by 2/3." If this is meant to imply the court simply awarded 1/3 of the requested amount, we do not view that characterization as accurate. While the ultimate award was somewhat less than 1/3 of the amount initially sought, this was due to a combination of rate and hour reductions. We note the hour reduction was slightly more than 50 percent; as far as we can tell, the court rounded down the halved hours in calculating the lodestar. For purposes of simplicity, we will refer to that reduction as "50 percent."

[6]     Further statutory references are to the Civil Code unless noted.

8

fee should recover compensation for "*all* the hours *reasonably spent*, including those relating solely to the fee." (*Ibid*.)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*Ibid*.)

As the party seeking fees, Plikaytis " 'bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' " (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.) It is also her "burden on appeal to prove that the court abused its discretion in awarding fees." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98 (*Gorman*).)

"We review an order granting or denying fees for an abuse of discretion. [Citation.] 'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion.' " (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148 (*Graciano*).) "The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] ' "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason'

9

under the applicable law and the relevant facts." ' "  (*People v. Giordano*, 42 Cal.4th 664, 663.)

*A. The trial court erred in declining to consider the previously filed supporting documents incorporated by reference.*

Plikaytis contends the trial improperly failed to consider both her billing records and additional documents she filed in support of her first fee motion.

Plikaytis does not establish the trial court failed to consider the billing records (although, as we discuss *post*, it is not clear the court did so in more than a cursory manner).  "[I]t is the trial court's role to examine the evidence, and we presume the court performed its duty."  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1324 (*Christian Research*).)  Here, the court expressly referenced "[l]ooking at Ms. Plikaytis'[s] billing records," and indicated that Scott A. McMillan's declaration provided "competent evidence" of the number of hours claimed by his firm.  This is sufficient to conclude the court considered the records.  To the extent Plikaytis is relying on the court's comments that the billing reports attached to Debra's opposition were "apparently from the 2014 motion" and it was "unclear how they correlate[d]," this does not suggest otherwise.  The court appeared to be expressing confusion with Debra's use of 2014 billing records, not declining to review those that Plikaytis submitted in 2016.

Turning to the previously filed documents, we agree the trial court erred in refusing to consider them.[7]  Rule 3.1110 addresses the general format for motions.  As

---

[7]    Plikaytis contends this issue implicates the meaning of rule 3.1110(d), and de novo review applies; Debra maintains we review for abuse of discretion.  We agree with

10

noted *ante*, rule 3.1110(d) states that "[a]ny paper previously filed must be referred to by date of execution and title." Rule 3.1113 provides rules for the memorandum in support of the motion, and rule 3.1113(j) states that "[t]o the extent practicable, all supporting memorandums and declarations must be attached to the notice of motion." Consistent with these rules, a litigant *may* incorporate previously filed documents and, where practicable, should file them with the motion.[8] But a litigant is not required to do so absent a rule precluding incorporation by reference. (Cf. rule 3.1345(a) & (c) [requiring separate statement for certain discovery motions and stating "[m]aterial must not be incorporated into the separate statement by reference"].)

Plikaytis directs us to the summary judgment context, where courts have long held that documents incorporated by reference are before the court. (See *Newport v. Los Angeles* (1960) 184 Cal.App.2d 229, 234 ["[W]e must not only look to the face of the affidavit but . . . must also examine the documents in the file which it incorporates, for it has long been established in this state that an affidavit may incorporate by reference other papers on file in the same action"]; see also *Larsen v. Johannes* (1970) 7 Cal.App.3d 491, 496 ["The notice of motion indicated reliance upon all the files in this action, and the pleadings incorporating the documentation. This was sufficient to bring them before the

---

Debra. The trial court acknowledged the rule, but elected not to consider the incorporated materials; the question is whether doing so was within its discretion.

[8] See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) ¶ 9:23.1–1a, discussing rule 3.1110(d), and recommending courtesy copies for large cases: "Where the court file becomes thick and unwieldy or mushrooms into several file folders, include a copy of the previously filed document as an exhibit to your current filing . . . . This will save the judge the undue amount of time required to locate the earlier filed document in the court file." (Italics omitted.)

11

court"]; but see *Truslow v. Woodruff* (1967) 252 Cal.App.2d 158, 164–165.)  Code of Civil Procedure section 437c now expressly contemplates incorporation by reference in summary judgment papers.  (Code Civ. Proc. § 437c, subd. (b)(7).)  We see no reason why incorporation by reference would be any less appropriate for a fee motion.

Here, Plikaytis incorporated by reference the original Scott A. McMillan and Cummings declarations, and other documents from the first fee motion, and provided courtesy copies of those declarations and certain other materials.  This was enough to put them before the court.  The court acknowledged rule 3.1110(d), but stated it had not seen this type of supporting material in a fee case, the prior motion had been denied, and the record was large.  These reasons do not justify the court's refusal to consider the previously filed materials.

Refiling materials to support fee motions may be typical, and even prudent, but it is not required.  Denied motions are part of the record.  And even assuming record size imposes an additional burden, to aid the court Plikaytis did provide courtesy copies.  At a minimum, if the court felt Plikaytis's efforts were insufficient to rely on incorporation by reference, it could have permitted her to refile the documents.  Simply refusing to review the materials was an abuse of discretion.

Because the trial court failed to consider the incorporated materials, which were submitted in support of Plikaytis's claim that the hourly rates charged by her attorneys were appropriate, we must remand the matter to the trial court so that it can review the evidence and determine, in the first instance, whether those rates were reasonable.  For similar reasons, the court must reconsider the fee request attributable to attorney Cummings, which was summarily denied based on a lack of evidence even though the

12

Cummings' declaration incorporated by reference appears to provide the necessary billing records.

### B. The trial court erred in how it applied the lodestar method.

Plikaytis makes several arguments regarding the lodestar: (1) the trial court failed to apply the lodestar method; (2) the court erroneously denied fees for the equitable and cross-claims; (3) the court erroneously denied fees for obtaining relief from the bankruptcy stays; and (4) the court's reduction of the fee award was an abuse of discretion. We address each issue in turn.

First, the trial court did not fail to apply the lodestar method. "In the absence of evidence to the contrary, we presume that the trial court considered the relevant factors." (*Gorman*, *supra*, 178 Cal.App.4th at p. 67.) Here, the court set forth what it concluded were reasonable hourly rates and the reasonable number of hours expended, and then multiplied these numbers to arrive at the lodestar. This is sufficient to establish application of the method. (See *Christian Research*, *supra*, 165 Cal.App.4th at p. 1324 ["The court's comment on the rate, combined with the specific number of compensable hours it identified, demonstrates the court applied the lodestar method"].)

Second, Plikaytis does not establish the trial court erred in denying fees for the equitable issues and cross-claims. "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 (*Reynolds*).) Apportionment is not necessary for work "common to both a cause of action in which fees are proper and one in which they are not allowed" (*id.* at pp. 129–130), or

13

where the claims are "inextricably intertwined." (*Graciano*, *supra*, 144 Cal.App.4th at p. 159.)

Here, the breach of contract claim was bifurcated from the other causes of action. Plikaytis's cross-claim for declaratory relief did allege offset and indemnity, but whether the Note was breached is a distinct issue from whether Plikaytis was entitled to an offset or indemnity in connection with it. Further, once Debra lost on the breach claim, those claims arguably became moot. (See *Redwood Coast Watersheds Alliance v. State Board of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 968.)[9] The trial court could reasonably conclude that only fees for the breach claim itself were recoverable.

Plikaytis's contrary arguments are unpersuasive. She contends the equitable and cross-claim work "went directly to the enforcement" of the Note, citing her claimed right to an offset. We disagree, for the reasons discussed above. She also claims the only equitable fees she seeks are for "status conferences which went to bringing the case to judgment." In a lawsuit with multiple claims, judgment is not entered until all claims are resolved; that does not make them related for fee purposes. Moreover, the breach claim was the only cause of action tried against Plikaytis, so she could have pursued judgment before the equitable trial. (Code Civ. Proc., § 579 [permitting judgment as to one defendant among several, whenever proper].)

Her other contentions also lack force. She cites the bifurcation to demonstrate that most of the fees she seeks related to the contract action. That argument has merit, as far

---

[9] It also appears the bankruptcy court did not lift the stay as to these claims (at least based on the orders in the record), meaning Plikaytis's counsel would not have been working on them, regardless.

as it goes; it does appear that only a limited amount of time was claimed for equitable or cross-claim work. But the bifurcation chiefly illustrates that the other issues were distinct from the contract claim. Plikaytis also contends Debra participated in later stages of the proceedings. However, the issue is whether those later stages related to the *breach claim*, not whether they related to Debra.

Third, we agree it was error to exclude the bankruptcy fees.[10] California courts have determined that contractual attorneys' fees incurred in bankruptcy court may be recoverable. In *Circle Star Center Associates, L.P. v. Liberate Technologies* (2007) 147 Cal.App.4th 1203 (*Circle Star*), a tenant stopped paying rent and filed for bankruptcy. The landlord obtained dismissal of the bankruptcy, sued for breach of the lease, and included an attorneys' fees claim for the bankruptcy court work. (*Id.* at pp. 1206–1207.) The trial court struck the fee claim. (*Id.* at p. 1208.) The Court of Appeal reversed, concluding the landlord had a "right to pursue the bankruptcy-related fees in state court as a matter of contract because dismissal of the bankruptcy case restored to the parties their preexisting rights and remedies." (*Ibid*.)

Other courts have awarded postjudgment fees incurred in bankruptcy court on similar grounds. (See *Jaffe*, *supra*, 165 Cal.App.4th at pp. 937–938 [reversing denial of

---

10    The court denied all bankruptcy fees, so we assume it viewed them as unavailable and apply de novo review. (*Plotnik*, *supra*, 208 Cal.App.4th at p. 1615; see *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934 (*Jaffe*) ["[T]he issue is whether the trial court had the authority . . . to issue such an award for efforts Jaffe expended in the bankruptcy proceedings. This is a legal issue."] (Italics omitted).) Even if abuse of discretion review applies, as Debra suggests, we would conclude the court abused its discretion. (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 370 [while trial court has broad authority in setting fees, "it is an abuse of discretion to apply the 'wrong legal standard' "].)

postjudgment fees under Code Civ. Proc., § 685.040 for bankruptcy court adversary proceeding seeking nondischargeability, relying on *Circle Star* to hold judgment creditor "entitled to request in state court an award of attorney fees and costs for those efforts exerted in the bankruptcy proceedings" and explaining his "actions . . . were necessary in order to maintain, preserve, and protect the enforceability of the judgment"]; *Chinese Yellow Pages Co. v. Chinese Overseas Marketing Service Corp.* (2008) 170 Cal.App.4th 868, 882, 884–885 [observing bankruptcy law "does not affect the power of a trial court to impose reasonable and necessary attorney fees and costs pursuant to a state statute . . . after the automatic stay has expired"].)

We conclude the fees incurred in bankruptcy court are recoverable to the extent they relate to the state court breach of contract claim and are otherwise reasonable, and the trial court erred in denying them. The stay relief in December 2013 permitted Plikaytis to bring this contract action to judgment and to seek fees. Fees expended in obtaining that relief are recoverable. However, the March 2013 stay relief relating to dissolution of Talmadge East, and the February 2015 stay relief that permitted conclusion of the equitable trial, concerned issues distinct from the contract claims and those fees are not recoverable. We recognize the February 2015 stay relief order also clarified that Plikaytis could proceed with seeking judgment and fees on Debra's complaint, but it appears the December 2013 order had already provided this relief. Indeed, Plikaytis filed her first fee motion in May 2014.

We disagree with Debra that *Bos v. Bd. of Trs.* (9th Cir. 2016) 818 F.3d 486 (*Bos*) impacts our analysis. Debra contends that under *Bos*, Plikaytis cannot recover fees for her adversary proceedings because they did not involve enforceability or breach of the

16

Note. But the key issue here is stay relief, not the adversary actions; it appears only one 0.3 hour entry even references adversary proceedings.

To the extent Debra is suggesting that *Bos* limits fees here generally, we disagree. There, the Ninth Circuit denied section 1717 fees for defending an adversary complaint for nondischargeability, concluding such fees are not recoverable if the issue does not involve the contract's enforceability because such disputes are not "on a contract." (*Bos, supra,* 818 F.3d at pp. 488–490.) We are not bound by the lower federal courts (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3), and *Bos* is in any event distinguishable. The fees here are sought in state court, not bankruptcy court or another federal court. (Cf. *Circle Star*, *supra*, 147 Cal.App.4th at p. 1209 [contrasting "claims for fees raised in bankruptcy proceedings," with "fees in state court after a bankruptcy was dismissed"].) And it is not clear the Ninth Circuit always requires an enforceability question, even in bankruptcy court. (See *Penrod v. AmerCredit Fin. Serv.* (*In re Penrod*) (9th Cir. 2015) 802 F.3d 1084, 1087–1088 (*Penrod*) [action was on a contract and fees were recoverable where issue was whether contract would be enforced on its terms or limited by bankruptcy law, explaining that "[u]nder California law, an action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract"]; *In Re Relativity Fashion, LLC* (Bankr. S.D.N.Y. 2017) 565 B.R. 50, 58 [noting *Penrod* "had not resolved any dispute over interpretation of the contract"].) *Bos* does not preclude fees here. [11]

---

[11]    We note Plikaytis's billing records do not always specify which stay relief counsel was working on, and, as noted *ante*, the motions do not appear to be in the record. On remand, the trial court may consider the impact of any such omissions on recovery here.

Finally, we agree the trial court abused its discretion in reducing the hours claimed by Plikaytis's attorneys. Focusing first on McMillan, the court reduced the allowable hours by half for four reasons: the work was related to the bankruptcy proceedings, unrelated to the breach of contract claim, duplicative, and excessive. Other than the exclusion of bankruptcy fees, these grounds for reduction are potentially sound. (*Reynolds*, *supra*, 25 Cal.3d at p. 129 [recovery only for claims related to breach of contract]; *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 441 (*569 East*) [court may reduce hours for "duplicative or excessive" work].) But a remand is necessary for two reasons: (1) the award needs to be adjusted to account for the recoverable bankruptcy work and (2) the court failed to provide a reasonable justification for the wholesale reduction it imposed.

We recognize the trial court was not required to explain its reasoning. (*Gorman*, *supra*, 178 Cal.App.4th at p. 67.) However, "[t]he absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable," and may result in reversal. (*Ibid.*; see also *id.* at p. 101 [trial court abused its discretion in reducing fee award because "[w]e are unable to ascertain a reasonable basis for the trial court's reduction of the lodestar amount"].) Even when a justification is provided, reversal may be warranted when it is unreasonable. (See *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 272, 280–282 [reversing trial court's 70 percent reduction based on its finding that 70 percent of entries were unrecoverable; Court of Appeal explained there

---

The court may also consider the effect of any delay in pursuing judgment and fees on the contract claim, given the one-year gap between the jury verdict and Debra's bankruptcy filing.

"appear[ed] to be no reasonable basis for the conclusion that the total hours included in the 70 percent plus time entries . . . was even reasonably close to 70 percent of the total time claimed" and that the reduction method was "not a legitimate basis for determining a *reasonable* attorney fee award"].)

Here, the court provided little explanation, simply indicating the fees were inflated and identifying broad categories of objectionable entries. The court also referred to the billing records as "large stack of billing reports" and declined to provide any examples, precluding any inference that the court had carefully reviewed the records and identified particular issues supporting its reduction. Significantly, Debra did not argue for a 50 percent reduction below. Even accounting for the bankruptcy work, we cannot determine how the court arrived at a 50 percent reduction—particularly as the time related to the equitable and cross-claim work appears limited.

The decisions cited by Debra to support the court's exercise of discretion, *Christian Research* and *569 East*, are distinguishable. In those cases, the record reflected the trial court was quite familiar with the billing records. (See *569 East*, *supra*, 6 Cal.App.5th at p. 441 & fn. 18 [trial court "expressly stated it had 'culled through the billing statement' "]; *Christian Research, supra,* 165 Cal.App.4th at p. 1324 ["record amply demonstrates the trial court's familiarity with Alnor's billing submissions"].) They also involved single issue anti-SLAPP motions with fee requests exceeding hundreds of hours, calling into question attorney credibility. (See *Christian Research*, at pp. 1319–1320 [defendant sought over 600 hours on single issue anti-SLAPP motion; affirming award of 71 hours, explaining trial court reasonably could have concluded bills were padded and noncredible]; *569 East*, at pp. 440–441 [defendant claimed approximately

19

300 hours for anti-SLAPP motion on single cause of action; affirming award of around 100 hours].) Here, a breach of contract claim was tried to a jury verdict, and bringing the case to judgment involved obtaining relief from a bankruptcy stay. On these facts, a substantial fee request was not inherently suspicious and a significant reduction warranted more explanation.

We are not suggesting the trial court should " ' 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation." ' " (*PLCM Group*, *supra*, 22 Cal.4th at p. 1098.) Had the court indicated it carefully reviewed the billing records, explained the hours or projects associated with its duplicative or excessive findings, or perhaps provided examples, our analysis might be different. But under the circumstances, we are compelled to conclude the trial court abused its discretion.[12]

---

[12] Plikaytis requests that we award her reasonable attorneys' fees for this appeal. "[T]hat issue is best left for resolution in the trial court," and we therefore decline the request. (*Butler-Rapp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 930.) In light of our conclusions we likewise do not address Plikaytis's other arguments regarding the reduction of hours, or the denial of the multiplier (which she does appear to question, albeit without elaboration). The court may reconsider the multiplier on remand, although we in no way mean to imply that the application of a multiplier is required. Finally, we do not address issues discussed by the parties that are not before us (such as the timeliness of the second fees motion), or that are not implicated by the trial court's order (including work on obtaining relief from a writ of attachment).

DISPOSITION

The order awarding attorneys' fees to Plikaytis is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  Plikaytis shall recover her costs on appeal.

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

21