Filed 6/26/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEROY GUILLORY et al., | |
| Plaintiffs and Appellants, | G054027 |
| v. | (Super. Ct. No. 30-2008-00212410) |
| MICHELE HILL, | MODIFICATION ORDER TO CORRECT CLERICAL ERROR |
| Defendant and Respondent. | |

Due to inadvertence and clerical error, the order granting publication filed on June 25, 2019, is modified to correct the panel as follows:

Respondent Michele Hill; and multiple nonparties, County of Orange, Association of Southern California Defense Counsel, County of Riverside, League of California Cities and the California State Association of Counties have requested that our opinion, filed on May 31, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

2

Filed 5/31/19; certified for publication 6/25/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEROY GUILLORY et al., | |
| Plaintiffs and Appellants, | G054027 |
| v. | (Super. Ct. No. 30-2008-00212410) |
| MICHELE HILL, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Kim Garlin Dunning, Judge. Affirmed.

Quintilone & Associates, Richard E. Quintilone II; Eisenberg Law Firm and Mark W. Eisenberg for Plaintiffs and Appellants.

Lynberg & Watkins, Norman J. Watkins, S. Frank Harrell, and Pancy Lin for Defendant and Respondent.

\*          \*          \*

LeRoy Guillory and 11 other plaintiffs[1] appeal from the court's denial of their 42 U.S.C. section 1988 (§ 1988) motion for attorney fees as prevailing parties in their civil rights claim against defendant Orange County Sheriff's Department Investigator Michele Hill. Plaintiffs contend the court abused its discretion when it denied their request for attorney fees.

Section 1988 authorizes "courts to award a *reasonable* attorney's fee to prevailing parties in civil rights litigation." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 429 (*Hensley*), italics added.) The most important factor in assessing a fee's reasonableness is "the degree of success obtained" by the prevailing party. (*Id.* at p. 436.) "'Where recovery of private damages is the purpose of . . . civil rights litigation, a . . . court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' [Citation.] Such a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" (*Farrar v. Hobby* (1992) 506 U.S. 103, 114-115 (*Farrar*).) Furthermore, a "fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 (*Serrano*), fn. omitted.)

Here, in light of plaintiffs' minimal success and inflated fee request, the trial court properly exercised its discretion to deny their section 1988 motion. Plaintiffs originally sought over $1 million in damages but ultimately obtained an award of less than $5,400. Plaintiffs then moved for almost $3.8 million in attorney fees in a 392-page motion containing, in the trial court's words, "bloated, indiscriminate," and sometimes "'cringeworthy'" billing records. Accordingly, we affirm the court's postjudgment order.

---

[1] The other plaintiffs are Carl Vini Bergeman, Lorraine Colarossi, Carmine Colarossi, Jennifer Bell, Altan Aksu, David Ryder, John D'Agostino, Kathleen D'Agostino, Scott Deere, Sr., Robert Green, and Darren Johnson.

# I

## FACTUAL AND PROCEDURAL BACKGROUND[2]

*The Incident*

In 2007, in the predawn hours following a huge Halloween party, 100 special weapons and tactics (SWAT) officers raided the mansion where the party had taken place. (*Guillory v. Hill* (2015) 233 Cal.App.4th 240, 244-245 (*Guillory I*).) The SWAT team forcibly detained plaintiffs and restrained their hands behind their backs with zip ties. (*Id.* at p. 245.)

About an hour later, Hill and a team of around 40 officers entered the mansion to conduct a warrant-based search for evidence of illegal gaming. (*Guillory I*, *supra*, 233 Cal.App.4th at pp. 243, 246.) Hill coordinated the search. (*Id.* at p. 246.) At various times that day, she interviewed and released each plaintiff separately. (*Id.* at p. 247.) Plaintiffs' detention that day lasted "for as long as 14 hours." (*Id.* at p. 256.)

*The First Trial and Appeal*

Plaintiffs sued Hill and other defendants for allegedly violating plaintiffs' civil rights under 42 U.S.C. section 1983 (§ 1983). (*Guillory I*, *supra*, 233 Cal.App.4th at p. 243.) Eventually, "several defendants including the various SWAT teams, unnamed 'Doe' police officers, and County of Orange defendants dropped out, either by plaintiffs' failure to name the 'Doe' defendants or by settlement or summary adjudication," leaving Hill as the sole remaining defendant. (*Ibid.*)

A six-week trial ensued. (*Guillory I*, *supra*, 233 Cal.App.4th at p. 243.) At the close of evidence, the trial court granted Hill's motion for a directed verdict (Code Civ. Proc., § 630) on all of plaintiffs' claims. (*Guillory I*, at p. 243.)

---

[2]     We take some facts from the trial court's written order denying plaintiffs' section 1988 motion.

On appeal from the first trial, we reversed the directed verdict solely as to plaintiffs' "section 1983 claims based on the prolonged detention of the plaintiffs" after the search ended. (*Guillory I*, *supra*, 233 Cal.App.4th at p. 244.) We affirmed, however, the directed verdict on plaintiffs' other constitutional claims, "including the SWAT team and other officers' allegedly excessive force in entering and securing the premises" and "restraining the detainees with excessive force before Hill questioned them." (*Ibid.*) We ordered the parties to bear their own costs on appeal. (*Id.* at p. 256.)

*The Retrial*

Upon remand, *Guillory I's* remittitur restricted the trial court's jurisdiction to retrying "plaintiffs' claims alleging prolonged detention under section 1983." (*Guillory I*, *supra*, 233 Cal.App.4th at p. 256; see *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655.)

The "retrial was conducted in two phases." At the phase one bench trial, the court rejected Hill's affirmative defense of qualified immunity. During the phase two jury trial, plaintiffs argued the search ended around 7:30 a.m., while Hill contended it ended later that day at 2:00 p.m. "With the exception of Mr. Guillory, no plaintiff presented evidence of any economic damages."

By special verdict, the jury found the search ended at 2:00 p.m. "Based on the uncontroverted trial evidence, the jury also unanimously agreed that nine of the 12 plaintiffs were released after 2:00 p.m.," i.e., after the search ended. The jury awarded damages to these nine prevailing plaintiffs. "The total jury verdict for the nine plaintiffs was $5,335[] — the largest individual award was $3,000[]; the three smallest were $200[] each . . . ." The jury found in Hill's favor on the three remaining plaintiffs who had left the home before 2:00 p.m.

4

*Plaintiffs' Motion for Attorney Fees*

Plaintiffs moved under section 1988 for about $3.8 million in attorney fees. The trial court's tentative ruling denied plaintiffs' motion based in part on *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315 (*Christian Research*).

During the first hearing on plaintiffs' motion, the trial court invited the parties to submit seven-page briefs on *Christian Research*. One of plaintiffs' counsel offered to "resubmit [his] time," but the court refused the offer: "On the attorneys fees, you're [only] briefing *Christian Research*."

At the second hearing on plaintiffs' motion, the trial court noted plaintiffs had submitted 232 pages and "it [was] not just briefing." Consequently, the court struck the portion of plaintiffs' supplemental brief that exceeded seven pages. In the unstruck part of plaintiffs' supplemental brief, they reduced their request for attorney fees to $2.4 million.

*The Court's Order Denying Plaintiffs' Motion for Attorney Fees*

The trial court denied plaintiffs' section 1988 motion. In eight full pages of its written order, the court explained its findings and rationale. We quote at length from the court's order:

"The attorney's fees motion is 392 pages long. The court mentions this because in all those pages there is not a single declaration or chart that clearly and concisely sets forth the number of hours billed, the hourly rates, and the total amount requested for attorney's fees. It is necessary to comb through the motion and employ a calculator to glean the following: Total attorney/paralegal fees sought were $3,774,800[] to $3,791,535[], based on a 7,475[] to 7500 total number of billed hours. The bills are segregated by the two law firms that represented plaintiffs: Quintilone & Associates and Eisenberg Law Firm, APC." "[E]ven though this case originated against multiple defendants and was litigated through a first jury trial with a directed verdict at the close

5

of all the evidence, one appeal, and a second jury trial that proceeded to verdict, there was no attempt to separate the bills according to these events.  The presented billings included entries, *inter alia*, that pertained to dismissed parties, the three unsuccessful plaintiffs, the excessive force and unreasonable search theories, the voluntarily dismissed punitive damages claim, witnesses who were never deposed or called to testify at trial(s), and the unsuccessful additur motion . . . because, as counsel articulated at the first hearing, all that work led up to a judgment for nine plaintiffs.  There was no attempt to cull attorney's fees pertaining to the appeal, even though the Court of Appeal ordered the parties to bear their own costs on appeal."

"'Pyrrhic' aptly describes the result here, where nine of 12 plaintiffs recovered a mere $5,335[] in damages, yet their counsel seek $2.4 million to $3.7 million in attorney's fees."  "[S]tatements of damages before the first trial sought millions of dollars in damages.  The [Code of Civil Procedure section] 998 offers before the first trial exceeded one million dollars, as did the mandatory settlement conference demand before the second trial.  A jury verdict for each of nine plaintiffs in an amount far below the ceiling for a small claims case is certainly de minimis, if not nominal."

"All plaintiffs lost on all theories after a lengthy first trial, but regained one theory on appeal."  "Plaintiffs' counsel does not contend, and this court does not find, that work on the unsuccessful claims was 'inextricably entwined' with work on the sole, partially successful claim.  As the first trial court judge and the Court of Appeal noted, the unsuccessful claims were based on conduct by individuals and agencies other than defendant Hill.  Much of the work on the unsuccessful claims appeared unrelated to work on the partially successful claim, and plaintiffs' counsel made no effort to argue otherwise."

"Messrs. Eisenberg and Quintilone each submitted declarations in support of [plaintiffs'] motion, authenticating redacted billing records reflecting work apparently performed in connection with this lawsuit.  Those declarations and counsel's billing

6

records reveal plaintiffs seek compensation for all, or nearly all, the time attorneys and paralegals spent on anything connected with any plaintiff, whether or not connected with this litigation and anything connected to this litigation from the inception of their involvement.  They seek attorney's fees for work in this matter involving parties other than defendant Hill and appear to seek fees for some work with no apparent connection to this litigation.  For example, the billing records are permeated with entries reflecting:

"• Work performed in connection with claims of plaintiffs who did not prevail;

"• Work performed in connection with claims of plaintiffs against defendants plaintiffs voluntarily dismissed;

"• Work performed in connection with claims and/or theories that were dismissed;

"• Duplication of effort between counsel (e.g. Plaintiffs' counsel conferring and "'review[ing] communications from'" each other);

"• Work of a clerical nature performed by attorneys and paralegals;

"• Time entries so redacted the court cannot determine what work was performed or whether the time spent was reasonable; and

"• Pervasive padding, frequently in increments of less than two-tenths of an hour.

"Indeed, despite Mr. Quintilone's declaration that he 'utilized billing judgment' in preparing his portion of the request, he nevertheless attached billing records that suggest no effort was made to cull time not reasonably incurred as to defendant Hill, much less even edit the cavalier language in the time sheets.  At the hearings, court and counsel discussed [Quintilone's] entries [that defense] counsel aptly labeled as 'cringeworthy:'  'looked at lunch slideshow since Galvan was ugly' [citation]); and 'emails/phone calls[,] trial crap and running back and forth to printer for REQ['] [citation])."

7

"Neither state nor federal law compels Ms. Hill or this court to comb through voluminous billing records to determine which of the thousands of time entries reflect time spent on work for which the plaintiffs receiving a jury verdict might be entitled to recover, i.e.[,] to reduce the fee to what Plaintiffs should have asked for in the first place. Plaintiffs' counsel should have performed this task. Instead, they simply threw in all their bills and expected the trial court to do their work."

## II

### DISCUSSION

A. *Governing Law*

Section 1988 gives a court the discretion to award "a *reasonable* attorney's fee" to a prevailing party. (Italics added.) A party fails to meet the reasonableness standard if the fee requested is *unjust*: A "prevailing plaintiff '"should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."'" (*Hensley*, *supra*, 461 U.S. at p. 429.)[3]

The requirement that section 1988 fees be reasonable serves two strong, countervailing policies. First, the statute's purpose "is to ensure 'effective access to the judicial process' for persons with civil rights grievances" (*Hensley*, *supra*, 461 U.S. at p. 429), even "victims of . . . relatively minor constitutional violations" (*Choate*, *supra*, 86 Cal.App.4th at p. 325). Second, balanced against that policy "is an equally strong

---

[3] The exception for "unjust" fee awards "serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all. After all, where *the only* reasonable fee is no fee, an award of fees would be unjust; conversely, where a fee award would be unjust, the reasonable fee is no fee at all." (*Farrar*, *supra*, 506 U.S. at p. 118 (conc. opn. of O'Connor, J.).)

In contrast to prevailing plaintiffs, prevailing civil rights *defendants* "can recover attorney fees *only* where the court also finds that the civil rights claim was objectively '"frivolous, unreasonable or groundless, or that the plaintiff continued to litigate after it clearly became so."'" (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 322 (*Choate*).)

civic value in discouraging civil rights claims from being overlitigated in disproportion to the dollars and constitutional interests at stake and 'in the process inflicting heavy costs on [the government] opponent[s] and wasting the time of the court.'" (*Id.* at pp. 325-326.) "[F]ee awards under [section] 1988 were never intended to '"produce windfalls to attorneys."'" (*Farrar*, *supra*, 506 U.S. at p. 115.)

Consequently, a court's foremost task in considering a section 1988 motion is to evaluate the reasonableness of the fee requested. The "most critical factor" in that analysis is the *degree of success* obtained by the prevailing plaintiff. (*Hensley*, *supra*, 461 U.S. at p. 436.) Stated another way, the fee must be "'reasonable in relation to the results obtained.'" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 988-989 (*Chavez*) [concerning Code Civ. Proc., § 1032, subd. (a) (judgment could have been rendered in limited civil case)].) In measuring a plaintiff's success in obtaining private damages, the court must consider "'the amount of damages awarded as compared to the amount sought.'" (*Farrar*, *supra*, 506 U.S. at p. 114.) A plaintiff "who seeks compensatory damages but receives no more than nominal damages" will sometimes "receive no attorney's fees at all." (*Id.* at p. 115.) The court also may gauge a plaintiff's degree of success by comparing the plaintiff's successful claims to "the scope of the litigation as a whole." (*Hensley*, at p. 440.) If "a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims." (*Chavez*, at p. 989.)

In determining a fee's reasonableness, the court may also consider whether the *motion* itself is reasonable, both in terms of (1) the amount of fees requested and (2) the credibility of the supporting evidence. (*Christian Research*, *supra*, 165 Cal.App.4th at pp. 1318-1319.) The prevailing party must "submit evidence supporting the hours worked and rates claimed." (*Hensley*, *supra*, 461 U.S. at p. 433.) "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

9

ethically is obligated to exclude such hours from his fee submission." (*Id*. at p. 434.) Counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." (*Id*. at p. 437, fn. omitted.) "A fee request that appears *unreasonably inflated* is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano*, *supra*, 32 Cal.3d at p. 635, fn. Omitted, italics added [concerning Code Civ. Proc., § 1021.5 (private attorney general)].) "[C]ounsel may not submit a plethora of noncompensable, vague, block-billed attorney time entries and expect particularized, individual deletions as the only consequence." (*Christian Research*, *supra,* at p. 1329.) Rather, counsel must "prune the fee request to comply with the law" instead of trying "to transfer that responsibility onto the trial court." (*Ibid*.)

We review a court's ruling on a section 1988 motion for abuse of discretion. (*Choate*, *supra*, 86 Cal.App.4th at p. 323-324.) "This is appropriate in view of the [trial] court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (*Hensley*, *supra*, 461 U.S. at p. 437.) The "determination whether a victory is de minimis is generally left to the sound equitable discretion of the trial court in the first instance 'so as to avoid a second major litigation strictly over attorneys' fees.'" (*Choate*, at p. 326.)


B. *The Court Properly Exercised Its Discretion to Deny Plaintiffs' Fee Request*

The trial court's order contains detailed findings showing plaintiffs obtained a de minimis degree of success and submitted an unreasonable section 1988 motion and supporting billing records. Substantial evidence shows plaintiffs sought over $1 million in damages, were awarded less than $5400, and then requested almost $3.8 million in attorney fees in an almost 400-page motion crammed with obfuscating and questionable billing records.

10

1.  Degree of success

Nevertheless, plaintiffs argue the court "erred (and abused its discretion)" by denying their fee motion. They observe case law has identified three "relevant indicia of success — the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served." (*Farrar*, *supra*, 506 U.S. at pp. 122 (conc. opn. of O'Connor, J.).) Plaintiffs contend the court (1) made a "'legal error'" by failing to address "'the *significance of the legal issue* [or] the *public purpose* the litigation served,'" or (2) abused its discretion by misapplying the three factors. (Italics added.)

On plaintiffs' first contention, the trial court did not ignore the litigation's public purpose and whether plaintiffs raised significant legal issues. Indeed, the court concluded plaintiffs' "'litigation accomplished little beyond giving petitioners "the moral satisfaction of knowing that a [jury] concluded [their] rights had been validated,"'" and disagreed with plaintiffs' argument "the partially published appellate decision [in *Guillory I*] validates the importance of the issues they raised." In any case, to the extent the court was silent, we presume it followed the law in the absence of anything to indicate otherwise. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.)

On plaintiffs' second contention, the trial court did not abuse its discretion. We address each of the three *Farrar* factors in turn.

On the extent of relief obtained (i.e., the degree of success), plaintiffs assert they never sought any particular amount of damages because they specified no dollar figure in their complaint or to the jury. They conclude, "[s]ince Plaintiffs' Complaint sought no specific amount of damages and Plaintiffs made no specific damages demand to the jury, there was no amount 'sought' which could be compare[d] to the jury award." In their reply brief, plaintiffs claim their "compensatory damages expectations were always humble and reasonable, were never inflated and should not in fairness and good

11

conscience be judicially penalized as somehow 'overreaching.'"  They assert their "damages started off inherently noneconomic and modest."

We reject plaintiffs' assertion they never sought "any specific amount" of damages.  This technical argument puts form over substance, and suggests a party may affect a court's assessment of the "degree of success" factor by omitting from the complaint and closing argument any request for a specific dollar amount of damages.  But omitting a request for a specific damage amount does not insulate a party from a finding that he or she had only limited success, especially since the "most critical factor [in determining a fee's reasonableness] is the degree of success obtained."  (*Hensley*, *supra*, 461 U.S. at p. 436.)

As the trial court noted in its order, "this case was only about money damages; plaintiffs sought general and punitive damages — and attorney's fees."  Plaintiffs' "statements of damages before the first trial sought millions of dollars in damages.  [Their Code of Civil Procedure section] 998 offers before the first trial exceeded one million dollars, as did the mandatory settlement conference demand before the second trial."  The large dollar amounts plaintiffs specified in their statements of damages and settlement offers prevented an early resolution of this case.  (See *McCown v. City of Fontana* (9th Cir. 2009) 565 F.3d 1097, 1103-1105 [plaintiff obtained limited success with damage award far smaller than settlement request]; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1025 [Legislature sought to encourage settlement through Code Civ. Proc., § 998].)  Statements of damages and settlement offers, although possibly inflated for negotiating purposes, nonetheless give the opposing party some idea of whether there is room for purposeful settlement discussions.  The dollar figures stated in those communications have concrete consequences and can represent what a party seeks.  As defense counsel explained at the first hearing on plaintiffs' motion:  "It doesn't matter . . . [that plaintiffs' counsel is] here saying that all he has left is a small claims case [and he's] not asking for money. . . .  The damage has

12

already been done . . . . If they had come in at the outset and said, we want $3,000, we would have been done a long time ago. . . . But that's not what they did. As the court can see, right at the outset, they asked for millions of dollars." In sum, the trial court properly considered the amounts sought by plaintiffs at the outset and throughout this litigation, rather than simply their diminished expectations after a series of losses left them with a solitary defendant and a single sliver of their original case.

Turning to the second and third *Farrar* factors, plaintiffs contend they served a public purpose by litigating a significant legal issue on the legality of a postsearch detention. They offer the following proof: (1) Hill contended the law on this issue was not clearly established; (2) this court, before issuing *Guillory I*, twice requested additional briefing on the legality of a postsearch detention; and (3) this court partially published *Guillory I*. Plaintiffs conclude their case clarified the law governing postsearch detention and thereby deterred law enforcement from violating detainees' civil rights in the future.

Clarification of this legal issue was unnecessary because the prohibition against prolonged detention was established in this jurisdiction at the time of the 2007 search. (*Guillory I*, *supra*, 233 Cal.App.4th at p. 251.) This court's requests for further briefing and its partial publication of *Guillory I* do not prove otherwise; courts publish opinions and request briefing for a variety of reasons. More importantly, if the law on postsearch detention had been murky at the time of the underlying incident, Hill's qualified immunity defense would have defeated all plaintiffs' claims against her (*Saucier v. Katz* (2001) 533 U.S. 194, 201, overruled on another point in *Pearson v. Callahan* (2009) 555 U.S. 223, 232, 236), leaving plaintiffs with a complete loss in this case. As the trial court's order observed: "There was no evidence Hill was disciplined for her conduct or that it (or the Court of Appeal decision) was the catalyst for, or resulted in, a change in [Orange County Sheriff's Department] policy." In sum,

13

plaintiffs' "exceedingly modest verdict created no new rule of liability, broke no ground, and sent no message." (*Choate*, *supra*, 86 Cal.App.4th at p. 326.)

2. Reasonableness of Motion

The trial court's denial of plaintiffs' motion is equally justified by their inflated fee request. As we stated in *Christian Research*, "[s]ubstantial evidence supports the trial court's conclusion counsel leavened the fee request with" overinclusive, unculled, redundant, redacted, and padded billing entries, thereby "destroying the credibility of the submission and . . . justifying a severe reduction." (*Christian Research*, *supra*, 165 Cal.App.4th at pp. 1318-1319.)

Plaintiffs distinguish *Christian Research* as an anti-SLAPP case,[4] and argue the anti-SLAPP fee-shifting statute (Code Civ. Proc., § 425.16) does not serve the same vital purposes as section 1988, which provides an incentive for counsel to vindicate constitutional rights. But fee shifting in an anti-SLAPP case is statutorily *mandated* (Code Civ. Proc., § 425.16, subd. (c)(1)), revealing a strong public interest in deterring SLAPP actions. (Code Civ. Proc., § 425.16, subd. (a) [public policy of encouraging "continued participation in matters of public significance"]; *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1131 ["fee-shifting provision . . . encourages private representation in SLAPP cases"].) Thus, the anti-SLAPP statute and section 1988 both encourage lawyers to take cases deemed to benefit society.

Furthermore, *Christian Research* is not the only decision supporting a court's denial or reduction of attorney fees when the fee request is unreasonably inflated. Indeed, *Christian Research*, *supra*, 165 Cal.App.4th at p. 1322, relies on *Serrano*, *supra*, 32 Cal.3d at p. 635, which concerns Code of Civil Procedure section 1021.5, the private attorney general statute. A "private attorney general theory" also underlies section 1988

---

[4] SLAPP stands for strategic lawsuits against public participation. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1127.)

14

(*Farrar*, *supra*, 506 U.S. at p. 122 (conc. opn. of O'Connor, J.)), revealing shared statutory purposes.  In *Serrano*, our Supreme Court warned that parties who lodge unreasonably inflated fee requests may be subjected to "'a severer reaction'" than a mere "'reduction of their fee to what they should have asked in the first place.'"  (*Serrano*, at p. 635.)

Finally, plaintiffs argue the court abused its discretion by refusing to consider their reduced fee request submitted in their supplemental briefing.  They contend their supplemental brief addressed each of the trial court's concerns, such as their billing for legal work on dismissed claims and nonprevailing plaintiffs.  But plaintiffs had a duty to submit a reasonable request on the first try.  Furthermore, the court invited supplemental briefing only on *Christian Research*, and specifically *not* on plaintiffs' revised fee requests.  Indeed, defense counsel argued plaintiffs' supplemental brief on reduced fees amounted to an untimely new motion for attorney fees.

Nor did the supplemental brief's reduction of plaintiffs' fee request to $2.4 million solve the problems of overreaching and of transferring plaintiffs' counsel's job to the trial court.  Even at the second hearing on the motion, after the supplemental briefs had been submitted, the court asked Eisenberg, "[D]espite the tremendous amount in attorneys' fees that you're asking, it's plaintiffs' position that the court needs to go through these hundreds of pages and come up with a lodestar[?]"  Eisenberg replied, "Yes, with a caveat," and then suggested the court calculate a lodestar for his billings (exempting him from the "severer penalty"), while striking those of his cocounsel Quintilone.

The court's order found fault with both Eisenberg's and Quintilone's billing records.  "We may not reweigh [that] implicit credibility determination . . . ."  (*Christian Research*, *supra*, 165 Cal.App.4th at p. 1319.)

15

## III

### DISPOSITION

The trial court's postjudgment order denying plaintiffs' section 1988 motion is affirmed.  Hill is entitled to costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.

Filed 6/25/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEROY GUILLORY et al., | |
| Plaintiffs and Appellants, | G054027 |
| v. | (Super. Ct. No. 30-2008-00212410) |
| MICHELE HILL, | O R D E R |
| Defendant and Respondent. | |

Respondent Michele Hill; and multiple nonparties, County of Orange, Association of Southern California Defense Counsel, County of Riverside, League of California Cities and the California State Association of Counties have requested that our opinion, filed on May 31, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.