Filed 2/18/22 The Little Cottage Caregivers v. Katchko CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE LITTLE COTTAGE CAREGIVERS, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> YELENA KATCHKO et al., <br><br> Defendants and Appellants. | B306133 <br><br> (Los Angeles County Super. Ct. No. 19STCV02797) |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge. Affirmed.

Reif Law Group, Brandon S. Reif, Marc S. Ehrlich and Ohia A. Amadi for Defendants and Appellants.

Law Offices of JT Fox and J.T. Fox; Law Office of Kathryn M. Davis and Kathryn M. Davis for Plaintiff and Respondent The Little Cottage Caregivers, LLC.

_____

Attorney Yelena Katchko and her law firm Katchko, Vitiello & Karikom, P.C. (KVK; collectively, the Katchko defendants) appeal from an order denying their motion for attorneys' fees and costs after the trial court granted their special motion to strike (Code Civ. Proc., § 425.16; anti-SLAPP statute)[1] the complaint for fraud and related claims filed by Adie Meiri, Vietnam Nguyen, and Little Cottage Caregivers, LLC (Little Cottage; collectively, the Little Cottage plaintiffs). The Katchko defendants contend section 425.16, subdivision (c), mandates that a prevailing defendant on a special motion to strike "shall" recover its attorneys' fees, and the trial court did not have discretion to deny fees entirely. Little Cottage argues the trial court had discretion to deny an unreasonable fee request, and the court did not abuse its discretion because the Katchko defendants' fees motion was inflated and unsupported.[2] We agree the trial court had discretion to deny an unreasonable request for fees and conclude the Katchko defendants waived any challenge to the court's exercise of discretion. We affirm.

---

[1]  ""SLAPP" is an acronym for "strategic lawsuit against public participation."" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 785, fn. 1.) All further undesignated statutory references are to the Code of Civil Procedure.

[2]  The respondent's brief is filed on behalf of only Little Cottage. Meiri and Nguyen have not appeared in this appeal.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Underlying Lawsuits[3]*

The parties' dispute concerns competing claims to ownership of Little Cottage, a medical cannabis collective founded by Nguyen in 2006.  In June 2016 Tzehou Kung retained the Katchko defendants to assist him in purchasing Little Cottage from Don Yoo for $1.2 million.  Yoo had acquired Little Cottage in 2014 from Yun Taek "Scott" Kang, who had acquired it from Nguyen sometime between 2012 and 2014.  However, in late 2016—while Kung and the Katchko defendants were finalizing Kung's acquisition—Meiri asserted he was the true owner of Little Cottage, having purchased 50 percent of the business from Nguyen in 2010 and another 35 percent through exercise of an option in 2011.  Meiri claimed Kang's 2012 purchase had been fraudulent and the documents demonstrating his ownership of Little Cottage were false.

In January 2017 the Katchko defendants represented Kung in filing a lawsuit against Meiri for conversion and declaratory relief, among other claims, seeking to establish Kung as the owner of Little Cottage.  (*Little Cottage Caregivers, LLC v. Meiri* (Super. Ct. L.A. County, No. SC126909) (*Little Cottage I*).)  After a bench trial, in August 2018 the trial court[4] found Meiri owned 85% of Little Cottage and was its managing member, and the court enjoined Kung from operating Little Cottage and using its

---

[3]  Our summary is based on the undisputed facts in the trial court's August 22, 2019 order granting the Katchko defendants' special motion to strike and the exhibits to the October 25, 2019 declaration of Ohia Amadi in support of the fees motion.

[4]  Judge Gerald Rosenberg.

name and goodwill and ordered Kung removed from its corporate documents and licenses. Kung appealed the judgment.[5]

On January 28, 2019 Little Cottage, Meiri, and Nguyen filed the instant action against the Katchko defendants, Kung, Yoo, Kang, and eight other parties involved in Kung's acquisition of Little Cottage. The complaint asserted nine causes of action against the Katchko defendants: theft by false pretenses, fraud, negligent misrepresentation, intentional interference with contractual relations, intentional interference with prospective business advantage, conversion, defamation, unlawful business practices, and for an accounting. The complaint alleged Katchko was the "mastermind" behind Kung's scheme to steal Little Cottage from Meiri in that despite learning of Meiri's claim of ownership in July 2016, the Katchko defendants prepared the purchase agreement and corporate documents to transfer Little Cottage to Kung and establish Kung as the company manager. The Katchko defendants also "prepared and filed numerous fraudulent documents with various government entities misrepresenting the ownership of [Little Cottage]." They joined in the fraud so they could receive a $346,000 commission on the transaction.

---

[5] After the instant appeal was filed, Division Three of this district reversed the judgment in *Little Cottage I*, holding that substantial evidence did not support the trial court's findings that Kung had constructive notice of Meiri's interests and was not a bona fide purchaser of Little Cottage. The Court of Appeal ordered the trial court to enter a judgment declaring Kung a 50 percent owner of Little Cottage (which was not disputed), but it remanded for further proceedings as to Meiri's claim he owned an additional 35 percent of the company. (*Little Cottage Caregivers v. Meiri* (Aug. 21, 2020, B294533) [nonpub. opn.].)

4

B.      *The Katchko Defendants' Anti-SLAPP Motion*

On April 25, 2019 the Katchko defendants filed a 16-page special motion to strike the complaint under section 425.16.  They argued the Little Cottage plaintiffs' claims were all based on protected activity under section 425.16, subdivision (e)(1) and (2),[6] because the claims were "based entirely on the alleged pre-litigation and litigation conduct as counsel for Kung in [*Little Cottage I*]."  Specifically, the complaint "admits that the [Katchko defendants] represented Kung in connection with his purchase of [Little Cottage], that they filed documents with various state and city regulatory bodies to protect Kung's interest in [Little Cottage], that they disputed Meiri's ownership interest in [Little Cottage], and that they filed [*Little Cottage I*] to resolve the controversy with respect to the ownership of [Little Cottage]." (Citations omitted.)  The Katchko defendants further argued the Little Cottage plaintiffs would be unable to demonstrate a probability of prevailing on the merits because the litigation privilege (Civ. Code, § 47) barred all of the claims in the complaint, and moreover, the claims had other legal defects. Katchko submitted a five-page declaration in support of the motion describing her and KVK's work on behalf of Kung in

---

[6]      Section 425.16, subdivision (e), defines an act protected by the anti-SLAPP statute to include, among other acts, "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

5

acquiring Little Cottage, her communications with Meiri and his affiliates, and the *Little Cottage I* litigation. KVK partner Giandominic Vitiello submitted a four-page declaration covering similar topics. Both Katchko and Vitiello submitted documentary evidence with their declarations.

In their opposition, the Little Cottage plaintiffs argued the complaint did not arise from protected activity and the Katchko defendants' conduct did not fall within the litigation privilege because the allegations were not limited to litigation activity but more broadly alleged a criminal scheme in which "Katchko orchestrated the entire chain of events necessary to steal TLCC's license." The Little Cottage plaintiffs also addressed the asserted infirmities in each cause of action and submitted declarations from Nguyen, Meiri, Meiri's father, and their attorney, Reza Sina.

The Katchko defendants filed a 10-page reply brief, evidentiary objections to plaintiffs' declarations, and a request for judicial notice.

After a hearing, on August 22, 2019 the trial court[7] granted the Katchko defendants' special motion to strike. In its order, the court held that all of the Little Cottage plaintiffs' causes of action involved protected activities under section 425.16, subdivision (e)(1) and (2), because the alleged conduct "include[d] Defendants' filing of the underlying action and the filing of documents with state entities to formalize Kung's ownership of [Little Cottage]." The court rejected the Little Cottage plaintiffs' argument the Katchko defendants' conduct was illegal and therefore not protected under the anti-SLAPP statute, explaining that "[a]t

---

[7]     Judge David Sotelo.

6

most Plaintiffs' documentary evidence would demonstrate that Defendants were not diligent in verifying the contents of the documents." As to the second prong of the anti-SLAPP analysis, the court found the litigation privilege applied to all of the Katchko defendants' activities and the Little Cottage plaintiffs "cannot establish that their claims have minimal merit."[8]

C.    *The Katchko Defendants' Motion for Attorneys' Fees*

On October 25, 2019 the Katchko defendants filed a motion for attorneys' fees and costs pursuant to section 425.16, subdivision (c). They sought $169,476 in fees, comprised of $126,587 for the special motion to strike and $42,889 for preparing the fees motion, plus $2,222 in costs. They argued the trial court should apply the lodestar method for calculating fees by multiplying the number of hours their lawyers at Reif Law Group, P.C. (RLG) reasonably expended by the prevailing market rates for similar work set by the Laffey Matrix.[9] They claimed

---

[8]    On June 19, 2020 the Little Cottage plaintiffs filed a motion for reconsideration, which the trial court denied on September 1, 2020. On September 14, 2021 we denied the Katchko defendants' motion to augment the record to include the trial court's order on the reconsideration motion because the order was issued after the appeal was filed.

[9]    The Laffey Matrix is "a general schedule and pay table for attorneys put out by the Department of Justice." (*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 650-651; accord, *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 454 ["[T]he Laffey matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C."]; see *Villanueva v. Account Discovery Systems, LLC* (D.Colo. 2015) 77 F.Supp.3d 1058, 1080 ["Although the matrix can be adjusted for different regions, courts in other districts have found that the

7

hours billed by four RLG partners as follows: Ohia Amadi (141.8 hours at $661 per hour); Rebecca MacLaren (33.3 hours at $747 per hour); Brandon Reif (6.9 hours at $747 per hour); and Marc Ehrlich (1 hour at $889 per hour). They also claimed hours for paralegal Cian Williams (9.5 hours at $203 per hour). The Katchko defendants argued their requested fees were reasonable in light of the number of causes of action, the high "stakes" of the case given the accusations of "illicit and fraudulent conduct," the potential damages sought in the complaint (exceeding $18 million), the skill required, the complete success of the motion to strike, the attorneys' experience and education, and the specialized nature of anti-SLAPP practice.

Lead counsel Amadi submitted a supporting declaration that attached a five-page table of billing entries for the four attorneys and paralegal who worked on the special motion to strike, with each entry identifying the date, billing attorney, number of hours billed, and a description of the work; for many entries, the work description was partially redacted. The Amadi declaration also included a printout of the Laffey Matrix from the website www.laffey.matrix.com and a one-page list of costs with the date, amount, and a brief description for each cost item.[10] Amadi declared, "In view of the foregoing and based on my experience working on Anti-SLAPP matters, I believe the number

Laffey Matrix is not 'more helpful than the rates actually used by other courts or the rates of law firms.'"].)

[10]    Although the Katchko defendants did not include the Amadi declaration in their designation of the record, on September 14, 2021 we granted their motion to augment the record to include the declaration, as well as Vitiello's reply declaration.

of hours expended on the Anti-SLAPP motion was reasonable as are the billing rates for this case."

In their opposition, the Little Cottage plaintiffs argued the fees requested by the Katchko defendants were excessive, unreasonable, and duplicative, and they should be reduced significantly or denied entirely. For example, 10.5 hours were billed for reviewing the complaint; 12.9 hours for legal research on the special motion to strike; 17.2 hours for "strategy" on the motion; 69.2 hours for outlining and preparing the motion; 13.6 hours for preparation of the declarations; and 9.3 hours to prepare for the hearing. Sina stated in his declaration that his firm, by comparison, spent 65 hours on the entire case, including 15 hours opposing the special motion to strike.

The Little Cottage plaintiffs also asserted, based on an analysis of the billing records detailed in the declaration of their attorney J.T. Fox, that the Katchko defendants billed 23.1 hours for work unrelated to the special motion to strike, including "evaluating the complaint, initial case strategy, filing case management statements and jury fees, correspondence about service of documents/pleadings, carrier reports, work on criminal matters, and other matters unrelated to the SLAPP motion."[11] Further, 24.1 hours of billing entries were vague, ambiguous, or uncertain, due to excessive redactions. For example, an entry of 2.5 hours by Amadi was redacted to contain only the description

---

[11] For example, the timesheets included several entries relating to service of the complaint, such has "Call with R. Sena, opposing counsel, re service of complaint and opposing counsel providing an acknowledgment of service." Williams also billed for time to "Prepare Notice of Jury Fees Deposit," and the Katchko defendants included the jury fees in their cost request.

9

"[a]nalyze potential arguments." In addition, the Katchko defendants submitted no billing records for the $42,889 in attorneys' fees sought for the fees motion. Moreover, the 192.5 hours spent by the Katcho defendants were unreasonable because the litigation was not complex and "the only issue in the motion[] was disproving plaintiffs' probability of prevailing" because there was no substantial issue whether the lawsuit was subject to a special motion to strike.

Finally, the Little Cottage plaintiffs argued that because the fees requested were "unusually inflated," the Katchko defendants' "motion should be denied outright, and no attorney fees or costs awarded," citing the Supreme Court's statement in *Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 (*Serrano*) that "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether."

In their reply, the Katchko defendants argued that courts have drastically reduced an award of attorneys' fees only in cases where "evidence of padding [was] pervasive," which was not applicable to their motion. They did not, however, argue a trial court has no discretion to deny a prevailing anti-SLAPP defendant's fees motion altogether. Nor did they respond to any of the Little Cottage plaintiffs' challenges to individual time entries, and they did not seek to introduce further evidence regarding their attorneys' bills or fees incurred on the fees motion.

D.    *The Trial Court's Order*

At the March 2, 2020 hearing on the attorneys' fees motion, the trial court issued a tentative ruling to award the Katchko

10

defendants $95,777 in fees and costs.[12]  The tentative ruling included a finding "it was excessive for so many senior attorneys to work on this motion, especially considering[] Amadi's own substantial knowledge and experience in anti-SLAPP matters," and although "the complaint involved nine causes of action, the anti-SLAPP issue was not particularly complex."  Accordingly, the court indicated it would credit only the 141.8 hours Amadi billed to the special motion to strike at his standard hourly rate of $460 (rather than $661 per hour requested under the Laffey Matrix) and exclude the fees billed by the other attorneys, for a total fee award of $65,228 on the special motion to strike.  With respect to the fees motion, the court stated it intended to credit RLG's full hours spent on that motion at the firm's standard blended hourly rate of $425, for a total of $28,327.  The court tentatively stated it would award the requested $2,222 in costs.[13]

At the hearing, Amadi argued for the Katchko defendants that the trial court should award the 33.3 hours billed by

[12]     On February 26, 2021 we granted the Katchko defendants' motion to augment the record to include the trial court's tentative ruling.

[13]     The trial court stated in its tentative ruling that the Little Cottage plaintiffs did not dispute the $2,222 in costs claimed by the Katchko defendants.  In fact, the Little Cottage plaintiffs argued in their opposition that "the cost entries contained in defendants' itemized request for costs. . . are insufficiently certain to inform the plaintiff and the Court as to the exact nature of the costs incurred and whether or not these costs were connected to the SLAPP Motion.  For this reason, defendants should not receive the full amount of costs requested in their moving papers and any costs award [should be] reduced accordingly."

11

MacLaren because MacLaren was experienced in anti-SLAPP matters and "was brought in to help prepare . . . the anti-SLAPP motion itself while [Amadi] did the day-to-day on the case." Further, the special motion to strike was not straightforward and included "substantial evidentiary objections." Amadi stated RLG's two associate attorneys "were, I think, busy on other matters," so the firm "tried to staff it as leanly as we could" with the firm's four partners. Finally, he argued the court should apply the prevailing market rates instead of RLG's standard rates because the prevailing market rate is presumptively reasonable.

Fox argued on behalf of the Little Cottage plaintiffs that the tentative ruling to award 141.8 hours for Amadi's work was grossly excessive, and the "huge difference" between Amadi's hours and the 75 hours the plaintiffs' attorneys collectively spent on the matter showed the fees motion was "completely devious and beyond reality" and would result in a "windfall" for the Katchko defendants. Further, it was "highly unlikely" that the Katcho defendants spent five full weeks to prepare their special motion to strike, and their fees motion was simply a "cut and paste." He reiterated his argument that specific billing entries were excessive or did not exist, citing the 17 hours the Katchko defendants spent on "strategy" to prepare the special motion to strike in addition to the time billed to prepare the motion. Asked by the court what the Little Cottage plaintiffs believed would be an appropriate amount of attorneys' fees to award, Fox responded, "[O]ur request is that this court determine that 75 hours be the reasonable time spent in calculating its fees." Fox did not argue the motion should be denied altogether, and neither party addressed the requested costs.

12

The court took the motion under submission to "look at these numbers one more time." On March 23, 2020 the court issued a one-page minute order denying the motion, in which it did not state the basis for its ruling. The Katchko defendants timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c)(1); accord, *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 322.) "It is well established that '[t]he amount of an attorney fee award under the anti -SLAPP statute is computed by the trial court in accordance with the familiar "lodestar" method. [Citation.] Under that method, the court "tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work."'" (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 432 (*569 East*); accord, *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321 (*Christian Research*).) "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*); accord, *Christian Research*, at p. 1321.) Moreover, "a fee award under the anti-SLAPP statute may not include matters unrelated to the anti-SLAPP motion, such as 'attacking service of process, preparing and revising an answer to the complaint, [or]

13

summary judgment research."' (*569 East*, at p. 433; accord, *Christian Research*, at p. 1325.) "'[A]s the parties seeking fees and costs, defendants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."' (*569 East,* at p. 432; accord, *Christian Research*, at p. 1320.)

We generally review a trial court's ruling on a motion for attorneys' fees under section 425.16, subdivision (c), for an abuse of discretion. (*569 East, supra*, 6 Cal.App.5th at p. 433; see *Russell v. Foglio* (2008) 160 Cal.App.4th 653, 661 ["'The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel, and the amount of time involved.'"].) However, the Katchko defendants contend their appeal raises "a purely legal issue" whether a trial court may deny attorneys' fees entirely under section 425.16, subdivision (c), and they argue we "need not and should not reach the question of whether the amount of the attorney fees sought by the [m]otion was 'reasonable.'" Accordingly, we review the legal question whether a trial court may deny a prevailing defendant's fees motion under section 425.16 de novo. (See *City of Vallejo v. NCORP4, Inc.* (2017) 15 Cal.App.5th 1078, 1085 ["'"when reviewing the interpretation and application of a statute where the ultimate facts are undisputed"' an appellate court exercises its independent judgment"]; accord, *Dobos v. Voluntary Plan Administrators, Inc.* (2008) 166 Cal.App.4th 678, 683 ["proper interpretation of a statute, and its application to undisputed facts, presents a question of law that the appellate court reviews independently"].)

14

B.	*The Trial Court Had Discretion To Deny the Attorneys' Fees Motion*

The Katchko defendants contend that because section 425.16, subdivision (c), provides that a prevailing defendant on a special motion to strike "shall" recover its fees and costs, the trial court had no discretion to deny their fees motion in its entirety. Contrary to their contention, the Supreme Court and Courts of Appeal have consistently recognized that a trial court has discretion under the anti-SLAPP statute to deny an unreasonably inflated attorneys' fees motion.

In *Ketchum, supra*, 24 Cal.4th at page 1137, the Supreme Court held a trial court may include a multiplier when awarding attorneys' fees to a prevailing party under section 425.16, subdivision (c), observing that "attorney fees may be awarded only for *hours reasonably spent*, thus discouraging unnecessary or frivolous litigation. . . . 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.'" (Quoting *Serrano, supra*, 32 Cal.3d at p. 635 [examining fee-shifting in a private-attorney-general action under section 1021.5 in light of federal case law and recognizing that if trial courts "'were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful.'"].) The *Ketchum* court underscored, "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the

15

fee downward or deny an unreasonable fee altogether." (*Ketchum*, at p. 1138.)

Since the Supreme Court decided *Ketchum*, courts have recognized a trial court's discretion to dramatically reduce or deny an unreasonable fees motion in connection with anti-SLAPP motions and motions made under other fee-shifting statutes. In *Christian Research, supra*, 165 Cal.App.4th at pages 1319 through 1320, the Court of Appeal affirmed the trial court's order reducing a prevailing anti-SLAPP defendant's compensable hours from 639 hours to 71 hours (of which only 31 hours were incurred in the trial court proceedings). The court acknowledged, "Because the Legislature specified the prevailing defendant 'shall be entitled to recover his or her attorney's fees and costs' (§ 425.16, subd. (c)), an award is usually mandatory." (*Christian Research*, at p. 1321, citing *Ketchum, supra*, 24 Cal.4th at pp. 1131, 1137-1138.) "The Legislature, however, did not intend recovery of fees and costs as a windfall. [Citations.] . . . [¶] Inflated fee requests constitute a special circumstance. In emphasizing that a trial court retains the discretion to award attorney fees in an amount that is *less* than the lodestar amount, the *Ketchum* court noted, '"To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."'" (*Christian Research*, at pp. 1321-1322.) "When the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated. [Citation.] The trial court is not required to issue a statement of decision." (*Id.* at p. 1323.) Applying these principles, the *Christian Research* court concluded the trial court did not abuse its discretion in reducing the defendant's fees by nearly 90 percent

16

in light of findings the special motion to strike "was not particularly complicated for an anti-SLAPP motion" and was "overstaffed" with five attorneys, and "the court could reasonably determine counsel's fee request was unreasonably padded, vague, and worthy of little credence." (*Id.* at p. 1326.)

In *569 East, supra*, 6 Cal.App.5th at pages 440 to 441, the Court of Appeal similarly affirmed the trial court's reduction of a prevailing anti-SLAPP defendant's request for attorneys' fees by almost 80 percent, explaining, "[T]he court could conclude many of the hours represented work unrelated to either the merits motion or the fees motion, such as work on discovery, ex parte appearances, work surrounding the case management conference, and conferring with cocounsel. The court could also have concluded downward adjustment was necessary because many billings involved entries that were either vague or were blockbilled time entries, and represented padding. [Citation.] Finally, the court could have concluded a substantial number of the hours claimed by [defendant] were unnecessary."

In *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 991, the Supreme Court held the trial court did not abuse its discretion in denying entirely a motion for prevailing party attorneys' fees on a workplace retaliation claim under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Citing *Ketchum, supra,* 24 Cal.4th at page 1137 and *Serrano, supra*, 32 Cal.3d at page 635, the Supreme Court held "the trial court reasonably could and presumably did conclude that plaintiff's attorney fee request . . . was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim, and the amount of time an attorney might reasonably expect to spend

17

in litigating such a claim.  This fact alone was sufficient, in the trial court's discretion, to justify denying attorney fees altogether."  (*Chavez*, at p. 991; see *Guillory v. Hill* (2019) 36 Cal.App.5th 802, 812, 814-815 [affirming trial court order denying in its entirety prevailing plaintiffs' request for $3.8 million in attorneys' fees on civil rights claim under 42 U.S.C.§ 1988 where trial court found the attorneys' time entries were overinclusive, redundant, and padded, thereby "'destroying the credibility of the submission and . . . justifying a severe reduction'"].)

The Katchko defendants do not cite any contrary authority, nor is there, for their contention a trial court lacks authority to deny a prevailing defendant's unreasonable motion for attorneys' fees in its entirety.  They are correct that *Christian Research* involved a reduction of fees, not an outright denial, and *Guillory* concerned prevailing plaintiff attorneys' fees under FEHA, which are discretionary (as are attorneys' fees under 42 U.S.C. section 1988 at issue in *Chavez*).  But we find persuasive the application by *Christian Research* and *569 East* of the Supreme Court's unequivocal language in *Ketchum, supra*, 24 Cal.4th at page 1137 that a trial court has authority to deny an "unreasonably inflated" fees motion under section 425.16, subdivision (c).  We recognize it was unusual (and not a favored practice) for the trial court to issue a detailed tentative ruling analyzing and cutting in half the requested attorneys' fees, then to deny all attorneys' fees without an explanation, especially given that the Little Cottage plaintiffs did not press the court at the hearing to deny all attorneys' fees.  But Little Cottage presented evidence and argument that the Katchko defendants' attorney bills were "completely devious and beyond reality" and

18

would result in a "windfall," and the trial court stated it intended after taking the fees motion under submission to "look at these numbers one more time." In further reducing the fees to zero, we infer the trial court found the request was inflated. (*Christian Research, supra*, 165 Cal.App.4th at p. 1323.)

C.     *The Katchko Defendants Waived Any Challenge to the Trial Court's Exercise of Discretion*

As discussed, the Katchko defendants maintain in their reply brief that "this Court need not and should not reach the question of whether the amount of attorney fees sought by the fee [m]otion was 'reasonable.' That question is outside the scope of the purely legal issue in this appeal."[14] However, they also argue that "[i]f this Court nonetheless addresses the 'reasonableness' of the trial court's decision to award zero attorney fees (i.e., by the outright denial of the Fee Motion), it should find that the trial court's 'award' of zero attorney fees was unreasonable, arbitrary, and an abuse of discretion."

The Katchko defendants have waived the argument their request for attorneys' fees and costs was reasonable and thus the trial court abused its discretion in denying their fees motion,

---

[14]     The Katchko defendants did not include in their designation of record their fee declarations and other supporting evidence, although they later moved to augment the record to include these documents, which motion we granted. Little Cottage argued in its respondent's brief that "[b]ecause [the Katchko defendants] failed to rely on the omitted evidence to demonstrate an abuse of discretion or prejudicial error in denying fees (instead, arguing only that the court lacked legal power to do so), the evidence is not directly relevant to [their] sole contention on appeal, and any unbriefed argument is waived."

19

because they failed to raise the argument in their opening brief and affirmatively argued in their reply brief we should not reach this issue.  (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9, ["the claim is omitted from the opening brief and thus waived"]; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'""].)  We therefore affirm the trial court's order denying the Katcho defendants' motion for attorneys' fees and costs.

## DISPOSITION

The order denying the Katchko defendants' motion for attorneys' fees and costs is affirmed.  Little Cottage is to recover its costs on appeal.

FEUER, J.

We concur:

PERLUSS, P.J.

SEGAL, J.