Filed 3/7/22  Kim v. Hulett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHN M. KIM,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>JEFFREY HULETT,<br><br>     Defendant and Respondent. | D078356<br><br><br>(Super. Ct. No. 37-2019-00056803-CU-HR-NC) |


APPEAL from an order of the Superior Court of San Diego County, Wendy M. Behan, Judge.  Affirmed.

Sahagun Law and Bryan Owens Sahagun for Plaintiff and Appellant.

Law Offices of Bryan W. Pease and Bryan W. Pease for Defendant and Respondent.


Plaintiff John M. Kim appeals the award of attorney fees and costs to defendant Jeffrey Hulett after the trial court granted in part and denied in

part Hulett's anti-SLAPP[1] motion (anti-SLAPP Motion) under Code of Civil Procedure section 425.16.[2]  Hulett's anti-SLAPP Motion was in response to Kim's petition for a civil harassment restraining order filed in October 2019 (Petition).

Kim contends the trial court erred in finding Hulett was the prevailing party on the anti-SLAPP Motion because the court struck only certain allegations in the Petition.  Alternatively, Kim contends the trial court abused its discretion in determining the amount of the fee award.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Petition*

Hulett and Kim are neighbors who live on Neptune Avenue in the city of Encinitas (City).  The Petition alleged Hulett's harassment began on September 5, 2019, and was ongoing.  The Petition included allegations "based on and seeking to enjoin Hulett from filing code complaints" with City.  Specifically, in section 8 of the Petition covering "Personal Conduct Orders," Kim requested that Hulett not only be prevented from harassing and/or contacting him and his family, but also that Hulett be ordered not to "[c]ontact the City of Encinitas regarding any home construction conducted by [Kim]."

Kim supported the Petition with his own declaration and the *unsigned* declarations of Benjamin L. Ochoa, Nancy Lee, Erin Hawk (Hawk), and Jeremiah Miller (Miller).  The unsigned declarations were based in part on a

---

[1]     "Anti-SLAPP" refers to the procedural vehicle to strike legal actions intended as a "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

[2]     All further statutory references are to the Code of Civil Procedure.

separate action against Hulett by the Hawk-Miller family, who at one point lived on the same block as Kim and Hulett. (See *Hawk v. Hulett*, San Diego County Superior Court case No. 37-2019-00049839-CU-NP-NF, September 20, 2019 (*Hawk* Action).) In the *Hawk* Action, the plaintiffs also sought to enjoin Hulett from making complaints to City for their alleged code violations.

Kim declared under penalty of perjury that, when he began residing on Neptune Avenue, he was unaware Hulett had "been harassing all other neighbors for quite some time"; that Hulett "would closely watch the homes of anyone that might be doing construction and report such activities to the City"; that Hulett had recently filed a complaint with City involving Kim's construction project; and that to support his "false allegations" in the complaint to City, Hulett trespassed on Kim's property "to take photos and scream at [his] construction workers."

Kim further stated that he frequently traveled for work, and when away from home he was in a "constant state of fear" because his "defenseless five-month pregnant wife and fifteen-month old son are within grasps of a psychotic neighbor who stalks, threatens, and assaults others"; that Hulett is known to "barge into the homes [of neighbors] uninvited and unannounced [as alleged in the *Hawk* Action] to scream profanity in a home filled with young children and parents [which incident occurred in August 2016]"; that recently Hulett had been standing outside Kim's property taking pictures of Kim's home; and that Hulett's "relentless stalking and surveilling behavior makes [Kim] extremely uneasy that Mr. Hulett might decide to barge into [his] home when [he is] traveling."

On October 24, 2019, the trial court denied Kim's request for a temporary restraining order against Hulett. The court found "[t]he facts as

3

stated in [the Petition] do not sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed [Kim] and caused substantial emotional distress." The court set the matter for hearing on a permanent restraining order for mid-November 2019.

### *The Anti-SLAPP Motion*

Prior to the continued hearing on the Petition, Hulett filed his anti-SLAPP Motion. He asserted the allegation in the Petition that he began harassing Kim on September 5, 2019 was based on the "code complaint" Hulett filed with City that *same day* regarding Kim's "unpermitted construction" on the Neptune property; that the harm Kim alleged in the Petition included the " 'time and expense of dealing with the city of Encinitas due to [Hulett's] false claims of unpermitted/improper home construction' "; that the relief sought by Kim included an order preventing Hulett from contacting City " 'regarding any home construction conducted by [Kim]' "; and that Hulett's complaint to City constituted petitioning activity within the meaning of subdivision (e)(1) of section 425.16. Because the Petition was otherwise bereft of evidence of any other wrongdoing by Hulett, he further argued the court should dismiss the entire Petition "as a meritless SLAPP suit."

In his declaration in support of the anti-SLAPP Motion, Hulett stated under penalty of perjury that he had never met or spoken to Kim prior to his filing the Petition; that he first became aware of Kim's involvement in the home construction project on Neptune Avenue when served with the Petition; and that, prior to the filing of the Petition, his only knowledge of Kim was a result of Kim's involvement in "representing other individuals who have been engaging in illegal short-term vacation rentals" in the same neighborhood, which Hulett also had reported to City.

4

Hulett further stated at no point did he trespass onto Kim's property, including to take photographs to support his code complaint, nor did he "scream" at any of Kim's construction workers, as Kim alleged in the Petition. Hulett recalled having a single conversation with one of Kim's construction workers who confirmed Kim had not pulled "permits" prior to commencing construction, which fact Hulett contended was separately confirmed by City.

One of Hulett's attorneys, Charles Pernicka, also submitted a declaration under penalty of perjury. Pernicka stated his office received documents from City regarding Kim's Neptune property pursuant to the California Public Records Act. These records included City's "Notice of Violations—Administrative Citation Warning" dated September 13, 2019 (Notice), providing all construction work on Kim's property immediately stop until "all required approvals and permits for the residential remodel" were acquired. (Capitalization omitted.)

Also included in the records from City was a September 17, 2019 email from Paul Meardon to City concerning the Notice. Meardon's email included a PDF attachment of the "Lease/Option agreement" he and Kim had signed. In the email, Meardon stated the agreement showed Kim was " 'solely responsible for the unpermitted improvements' " on the Neptune property and " '[e]verything was done unilaterally by . . . Kim[,] breaching both [their] A]greement and [his] protestations that [Kim's] actions would result in a Notice of Violation citing [Meardon] as being on title.' "

Meardon's September 17 email also included an email chain between Meardon and Kim from a day earlier. In one such email, Kim wrote, " 'The person's name [who made the report to City] is Jeff Hulett, which of course you already know.' " It goes on, " 'I know this because I have taken pictures of him and I have had a private investigator following him around for

weeks. . . . Legal action is being filed against Jeff Hulett on Friday. When I file legal action, this gives me the power to subpoena phone records and records of any email . . . .' " (Underscore omitted.)

In addition, the records obtained from City included notices of violation regarding Kim's property dated October 2 and 10, 2019, the latter of which imposed a $1,300 fine and provided the amount of the fine would increase to $1,000 per day if Kim continued construction without the necessary permits. Pernicka also attached a copy of a complaint Meardon filed in San Diego County Superior Court on October 15, 2019 against an LLC in which Kim was identified as the sole member, along with a request for judicial notice. In this complaint, Meardon alleged the LLC had undertaken construction activities without the required permits and, despite receiving cease and desists orders from City, had continued construction without securing those permits.

In opposition, Kim argued the restraining order against Hulett was still necessary because Kim remained fearful that Hulett would "continue to trespass" on Kim's property and "further harass, and eventually assault [Kim] in his Residence as he has done with other victims" in the neighborhood. Kim also argued Hulett's filing of "false complaints" with City was not protected activity under section 425.16. Kim nonetheless agreed to "withdraw his request to enjoin [Hulett] from contacting the City regarding construction conducted by [Kim]," claiming this request had been "inadvertently" included in the Petition.

In his declaration, Kim stated Hulett's September 5, 2019 code complaint to City included false allegations that Kim allegedly was adding 200 to 300 square feet to his home, doubling the size of his garage, and raising his roof by more than 10 percent. Kim also stated he did not file the

6

Petition to prevent Hulett from complaining to City, but instead because of Hulett's illegal trespassing onto his property and his ongoing fear that Hulett would barge into his home, like Hulett had done in the past to other neighbors. Kim noted Hulett had also filed an anti-SLAPP motion in the *Hawk* Action. Kim asserted Hulett was using the anti-SLAPP statute to "intimidate" others from filing "future legitimate complaint[s] for harassment" against Hulett.

In reply, Hulett argued that Kim failed to proffer any evidence to show the code complaint Hulett made on September 5 was false. To the contrary, based on the repeated notices of violation and the fines imposed by City regarding Kim's construction project, and in light of the separate legal action between Kim and Meardon, Hulett argued the evidence established the validity of his code complaint to City. Hulett also argued Kim could not show a probability of success on the Petition because, other than the code complaint, there was no evidence Hulett ever harassed or directed any behavior toward Kim and/or a member of his family.

After multiple continuances, the trial court on July 23, 2020 granted in part and denied in part Hulett's anti-SLAPP Motion.[3] The court granted the anti-SLAPP Motion with respect to the allegations in the Petition that (1) Hulett "be prohibited from contacting 'the City of Encinitas regarding any home construction conducted by [Kim]' (Petition at ¶ 8(c))"; and (2) Kim suffered injury as a result of Hulett's filing of "allegedly false claims" "of unpermitted home construction [by Kim]. (Petition at ¶ 7(a)(5).)" The court, however, refused to strike the balance of the Petition.

---

[3] Kim did not appeal the court's anti-SLAPP order.

### *Hulett's Motion for Attorney Fees and Costs*

On August 3, 2020, Kim dismissed the Petition without prejudice after he and Hulett entered into a settlement agreement in which they agreed not to harass each other and/or their family members or enter onto the other's property. As particularly relevant to this appeal, although the parties agreed they would bear their own attorney fees and expenses in connection with the Petition, they carved out from their settlement Hulett's ability to seek fees and costs under the anti-SLAPP statute.

On or about August 21, Hulett filed his motion for fees and costs under section 425.16, subdivision (c)(1) (Attorney Fees Motion). Hulett's counsel submitted declarations and invoices detailing the work they performed on the anti-SLAPP Motion, including dates and time spent on various tasks. The invoices also included myriad redactions for work that was unrelated to the anti-SLAPP Motion, for which Hulett did not seek recovery. Based on these declarations, Hulett sought $73,242.50 in fees. Hulett also sought $497.83 in costs, for a total award of $73,740.33.

Hulett argued that an award of fees was mandatory under section 425.16, subdivision (c)(1) because he was the prevailing party on the anti-SLAPP Motion; that all of the fees billed by his attorneys related to the anti-SLAPP Motion, including attempts by the parties to resolve their fee dispute; and that none of the time billed by his attorneys was devoted to responding to the Petition and/or preparing for the permanent restraining order hearing that the parties had delayed pending the outcome of the anti-SLAPP Motion (which hearing ultimately became moot as a result of their settlement agreement).

In opposition, Kim argued Hulett was not the prevailing party under the anti-SLAPP statute because the court "denied most of [Hulett's anti-

8

SLAPP Motion] . . . and allowed the single cause of action for civil harassment to continue forward." In addition, Kim argued that, even if deemed the prevailing party, Hulett's fee request was unreasonable as his attorneys were seeking recovery for work that was either unrelated to the anti-SLAPP Motion, or was duplicative of work they had done on a similar anti-SLAPP motion in the *Hawk* Action.[4]

In reply, Hulett reiterated the Attorney Fees Motion included only work done by his attorneys in support of the anti-SLAPP Motion in the instant case, and did not include any time spent addressing the remaining allegations in the Petition. Hulett noted the scope of issues between the parties had been substantially narrowed as a result of the court partially striking the allegations in the Petition related to Hulett's petitioning activity; and, as a result, the parties did not spend any time or money preparing for the permanent restraining order hearing.

### *The Court Awards Hulett Fees and Costs*

The Attorney Fees Motion came on for hearing on September 15, 2020. The trial court identified two issues at the hearing: first, whether Hulett was the prevailing party on the anti-SLAPP Motion; and second, whether the hourly rates charged by his attorneys and the work they performed were reasonable. On September 22, 2020, the trial court issued its order, which is the subject of this appeal.

The court found Hulett was the prevailing party on the anti-SLAPP Motion, even though it had struck only certain allegations in the Petition and not the entire cause of action. The court noted that once the allegations of

---

[4] Kim attached a copy of the anti-SLAPP motion Hulett had filed in the *Hawk* Action, highlighting what Kim claimed was the substantial overlap between that motion and the one Hulett filed in the instant case.

9

petitioning activity by Hulett were eliminated from the Petition, the only remaining alleged conduct by Hulett was his (1) potential trespassing onto Kim's property to take photographs submitted to City in support of the code violation; and (2) involvement in 2016 in an incident involving *other* neighbors that was the subject of the *Hawk* Action.

The court also found that the purpose of the restraining order "was solely" to prevent Hulett "from filing any more complaints" against Kim with City; that Kim was "disingenuous" in arguing he filed the Petition because he and his family were fearful of Hulett; that at the anti-SLAPP hearing, the court reminded Kim of his burden of proof in obtaining a restraining order and "expressed doubt" Kim could make such a showing, given the lack of any prior contact between the parties; and that shortly after it ruled on the anti-SLAPP Motion, Kim dismissed the Petition. Based on the foregoing, the court determined Hulett's anti-SLAPP Motion had a practical effect on the litigation to the benefit of Hulett.

After finding Hulett was the prevailing party on the anti-SLAPP Motion, the court turned to the amount of fees to be awarded. Using the lodestar method, the court found that, although the number of hours billed by Hulett's attorneys on the anti-SLAPP Motion was "high," that number was justified based on the court's "careful review" of the billing records because this "was not [a] typical anti-SLAPP motion."

However, the court also found the hourly rates claimed by Hulett's attorneys were excessive, noting the trial judge in the *Hawk* Action had set "reasonable hourly rates for Mr. Pease, Mr. Pernicka, and Mr. Noakes [at] $350, $325 and $275, respectively," and the hourly rate for paralegal work at $125. The court in the instant case adopted the billing rates used in the *Hawk* Action, finding they were "commensurate with counsels' skill and

10

experience and within the range of markets rates charged by attorneys of equivalent experience, skill and expertise."

The court thus awarded Hulett $45,653.75 in fees and, after reviewing the itemized costs sought by Hulett, $497.83 in costs, for a total award of $46,151.58.

## DISCUSSION

### A. Guiding Principles

In general, an award of attorney fees and costs is mandatory when a defendant prevails on an anti-SLAPP motion. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 (*Ketchum*) [a "SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees"]; see § 425.16, subd. (c)(1) [providing in part, "in any action subject to subdivision (b), a prevailing defendant on a special motion to strike *shall* be entitled to recover that defendant's attorney's fees and costs" (italics added.)].) By its express terms, the anti-SLAPP statute "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit." (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 446; see § 425.16, subd. (a) [providing the anti-SLAPP statute "shall be construed broadly"].)

Therefore, anti-SLAPP fee awards "should be fully compensatory" and, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." (*Ketchum*, *supra*, 24 Cal.4th at p. 1133.) However, the defendant may recover fees and costs only for the special motion to strike, and not for the entire litigation. (*S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 381.)

Although a fee award under section 425.16 is mandatory, the trial court possesses broad authority to determine the reasonable amount of attorney fees. (*Ketchum, supra*, 24 Cal.4th at p. 1131; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*Drexler*) [the experienced trial judge is the best judge of the value of the professional services rendered for cases in the court's community].) The Supreme Court has approved the use of the lodestar method for anti-SLAPP fee awards. (*Ketchum*, at pp. 1131-1132; see *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359.) The lodestar tabulation consists simply of "the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation. . . ." (*Ketchum,* at p. 1133, italics omitted.)

We review an anti-SLAPP fee award for abuse of discretion, and the trial court's fee determination " ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.) "Accordingly, there is no question our review must be highly deferential to the views of the trial court." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.) In assessing an attorney fee award, we resolve conflicts in the evidence in favor of the prevailing party, and the trial court's resolution of any factual issue is conclusive. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 (*Alnor*) [noting an attorney fee dispute "is not exempt from generally applicable appellate principles"].)

**B. Analysis**

We conclude the trial court properly exercised its broad discretion in determining the anti-SLAPP fee award for Hulett.

First, the court's finding that Hulett was the prevailing party under subdivision (c)(1) of section 425.16 is supported by substantial evidence. (See

12

*Alnor, supra,* 165 Cal.App.4th at p. 1322.) Although the court granted only part of Hulett's anti-SLAPP Motion when it struck various allegations in the Petition related to Hulett's petitioning activity, it is abundantly clear from the record that the granting of such relief substantially narrowed, if not eliminated, any remaining issues between the parties.

Indeed, the record shows at the time Kim filed the Petition, he and Hulett had never met or spoken; Hulett, when he initially made the code complaint to City, did not realize it was Kim who was undertaking the construction on the reported property; and Kim was aware Hulett in the past had complained to City about code violations by other neighbors, as alleged in the *Hawk* Action.

What's more, when the court granted in part the anti-SLAPP Motion, it then expressed concern about Kim's ability to obtain a permanent civil restraining order against Hulett in light of the remaining allegations in the Petition. The court also noted that it had already refused to grant Kim a temporary restraining order due to lack of evidence of any threats of violence or course of conduct by Hulett against Kim and/or his family; and that within days after it had granted the anti-SLAPP Motion, Kim dismissed his Petition without prejudice pursuant to the parties' settlement agreement.

For these reasons, we find inapposite the authorities relied on by Kim holding that a defendant is not the prevailing party under subdivision (c)(1) of section 425.16 when the granting of an anti-SLAPP motion has "no practical effect" on the litigation as a whole. (See e.g., *Moran v. Endres* (2006) 135 Cal.App.4th 952, 954 (*Moran*) [affirming the trial court's refusal to find the defendants prevailed under section 425.16, subdivision (c)(1) because their anti-SLAPP motion had an insignificant effect on the lawsuit, as the court struck only one of eight causes of action giving the defendants at most

an "illusory victory"]; cf. *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784 (*Colton*) [affirming an anti-SLAPP award of fees and costs when the trial court struck two of the plaintiff's six causes of action, concluding the defendant gained a "practical benefit from partially prevailing on the anti-SLAPP motion"].)

Here, substantial record evidence supports the trial court's finding that Hulett obtained a "practical benefit" (see *Colton, supra*, 206 Cal.App.4th at p. 784), and certainly more than a mere "illusory victory" (see *Moran, supra*, 135 Cal.App.4th at p. 954) when he partially prevailed on his anti-SLAPP Motion. Moreover, the court's finding Hulett was the prevailing party is also well within the bounds of reason. (See *Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 426 [" 'The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of a trial court.' "].)

Second, we reject Kim's argument that Hulett was not the prevailing party because the trial court did not strike Kim's entire cause of action in the Petition. The Supreme Court has made clear that a special motion to strike may be directed to specific allegations of protected activity constituting a claim for relief within a pleaded count that also includes allegations of unprotected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 ["When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief*."]; see *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 51 ["Because *Baral* permits a court to grant or deny an anti-SLAPP motion to specific allegations and claims arising from them, it anticipates a situation, such as here, in which the defendant prevails in part, and the

14

plaintiff prevails in part, on an anti-SLAPP motion," thus allowing the trial court to determine whether one of the parties is entitled to an anti-SLAPP fee award.].)

Third, we conclude the trial court properly exercised its broad discretion in applying the lodestar method and determining the amount of the anti-SLAPP fee award. (See *Ketchum, supra*, 24 Cal.4th at p. 1131; *Drexler*, *supra*, 22 Cal.4th at p. 1095.) The record shows the court "carefully" reviewed the voluminous records submitted by Hulett's attorneys in support of the fee request; and in so doing, *rejected* Kim's argument that certain of those fees were unnecessary and/or were duplicative of the work done on the anti-SLAPP motion brought by Hulett in the *Hawk* Action.

Although the trial court noted the number of hours billed by Hulett's attorneys was "high," it also recognized the anti-SLAPP Motion was not typical and, in any event, had been aggressively litigated by Kim. The court nonetheless exercised its broad discretion and reduced the hourly rates charged by Hulett's attorneys in determining the award. (See *Ketchum*, *supra*, 24 Cal.4th at p. 1134; *Drexler*, *supra*, 22 Cal.4th at p. 1095.) Relying on the evidence proffered and its own experience, the court then found the billable rates set by the trial judge in the *Hawk* Action to be reasonable and indicative of the rates charged by attorneys in the community for similar work, adopted those rates in the instant case, and reduced Hulett's anti-SLAPP fee award by almost 40 percent (i.e., $73,740.33 [requested] versus $45,653.75 [awarded].)

On this record, we cannot say the trial court's anti-SLAPP fee award in favor of Hulett was "clearly wrong." (See *Ketchum*, *supra*, 24 Cal.4th at p. 1132; *Drexler*, *supra*, 22 Cal.4th at p. 1095.)

15

## DISPOSITION

The trial court's September 22, 2020 order awarding Hulett fees and costs under section 425.16, subdivision (c)(1) is affirmed.  Hulett to recover his costs of appeal.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.